(No. 11049.)

CLARA G. BARTHOLOW *et al.* Appellants, *vs.* LILLIAN E. DAVIES, Appellee.

*Opinion filed December 21, 1916—Rehearing denied Feb. 9, 1917.*

1. ADOPTION—*the right of adoption is statutory in its origin.* The adoption of one person by another was unknown to the common law, and the right of such adoption is entirely statutory in its origin.

2. SAME—*the statute authorizes the adoption of such children, only, as are minors.* Although in the statute on adoption the word "minors" does not occur, it is manifest that the intention of the legislature was to authorize the adoption of such children, only, as are minors, and nowhere in subsequent legislation is a purpose apparent to depart from, enlarge or restrict this intention.

3. SAME—*when word "child" ordinarily means a minor.* While the meaning of the word "child," so far as age is concerned, depends upon the context, yet when the word is used generally and without reference to the relation of parent and child it will ordinarily be held to refer only to a person of immature years.

4. SAME—*order of county court ordering adoption of an adult is void.* Where a petition for adoption shows on its face that the person proposed to be adopted is an adult the county court has no jurisdiction to make any order on the petition, and the order of adoption, if made, is void and subject to attack by any person at any time; nor, in such case, does the doctrine of *laches* have any application.

5. PRACTICE—*what action is unnecessary after court sustains an objection to offered evidence.* Where the court sustains an objection to a material question put to a witness, and, after counsel has stated what he was offering to prove, announces that no evidence on that subject will be received, it is not necessary, in order to preserve rights depending on the establishing of such proof, to call all the witnesses on the subject and attempt to interrogate each one of them.

6. STATUTES—*effect of revision of act upon the construction of the former act.* In the revision of statutes neither an alteration in phraseology nor the omission or addition of words in the later statute will be held necessarily to alter the construction of the former act, and courts will authorize a change of construction only where the intention of the legislature is clear or the language used in the revised act plainly requires it.

DUNCAN, J., dissenting.

APPEAL from the Circuit Court of Cook county; the Hon. JESSE A. BALDWIN, Judge, presiding.

FREDERICK A. BROWN, and RAYMOND S. PRUITT, for appellants.

OLIVER & MECARTNEY, and JOHN S. BROWN, for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

James U. Borden, a bachelor ninety-five years old, died intestate on July 11, 1914. A bill in equity was soon after filed by the appellants in the circuit court of Cook county against Lillian E. Davies, which was afterward amended joining a number of other defendants. The amended bill alleged, in substance, that the complainants and the defendants, except Lillian E. Davies, are the heirs of James U. Borden; that he was of unsound mind continuously for the last fifteen years of his life; that Lillian E. Johnston lived in his home for many years and by cunning devices obtained an ascendancy over his mind in his declining years, and for the purpose of securing his property brought about the filing of a petition by him in the county court of Cook county, on May 28, 1909, while he was of unsound mind, representing that he desired to adopt Lillian E. Johnston, "a female child of about the age of thirty years;" that an order of adoption was entered on such petition; that the said Lillian E. Johnston, in furtherance of her schemes to obtain his property, obtained from him, while he was insane, conveyances of property, both real and personal, to the value of $100,000, the exact amount, nature and description being unknown to the complainants, and that she afterward married and is now known as Lillian E. Davies. The bill describes certain real estate alleged to have been obtained by Mrs. Davies from Borden without consideration while he was of unsound mind, and alleges that she holds the title to

other pieces of property which she purchased with funds obtained from Borden while he was of unsound mind and without consideration; that because of Borden's insanity the order of adoption should be declared void and Mrs. Davies should be ordered to restore to the estate of Borden the property which she obtained from him, and prays that she shall be deemed to hold all of said property in trust for the heirs of Borden, and for a discovery of all the property and money which she obtained from him. Lillian E. Davies answered the bill, denying that the complainants and defendants, or any of them, are heirs of James U. Borden but alleging that she is his only heir by virtue of the order of adoption; that the complainants knew of the adoption proceedings long before the death of Borden and acquiesced therein, and by reason of their delay and *laches* are not entitled to any relief against them. She denies that Borden was of unsound mind, admits that she lived at his home for many years and that she acquired the title to certain pieces of property described in the bill from Borden, and denies that the conveyances were procured by any arts or fraudulent devices while Borden was of unsound mind or without a valuable consideration. A replication was filed to this answer and the cause came on for a hearing. The complainants offered evidence in regard to the physical and mental condition of Borden about the time when the decree of adoption was entered, to which the defendant objected, upon the ground that the adoption decree is binding on the parties and cannot be collaterally attacked, and the court sustained the objection on that ground. Thereupon, on motion of the defendant's solicitor, the court excluded all the evidence of the witnesses upon the ground that the testimony tended to impeach the decree of the county court in a collateral proceeding and dismissed the bill for want of equity, and the complainants appealed.

It is manifest that if the decree of adoption is valid the complainants would have no right to the relief prayed for

in the bill, because Lillian E. Davies would be the sole heir of James U. Borden and the complainants would have no interest in his estate. It appears from the petition for adoption and the decree that the person proposed to be adopted was thirty years old. The appellants insist that under the statutes of this State the county court had no jurisdiction to enter a decree of adoption of an adult by another person.

The adoption of one person by another was unknown to the common law. The right of such adoption is entirely statutory in its origin. The first statute on the subject in this State was an act of the legislature passed in 1867, entitled "An act to provide for the adoption of minors," (Laws of 1867, p. 133,) which is here set out:

"Section 1. *Be it enacted by the People of the State of Illinois, represented in the General Assembly:* That any person desirous of adopting a child, so as to render it capable of inheriting his or her estate, may present a petition to the circuit or county court of his or her residence, setting forth the name, age and sex of such child; and if such person desires the name changed, stating the new name, also the name of the father, or, if he be dead, or has abandoned his family, the mother, and if she be dead, the guardian, if any, and the consent of such father or mother to the act of adoption. And if the child has no father or mother, then the consent of no person shall be necessary to said adoption. It shall be the duty of the court, upon being satisfied of the truth of the facts stated in the petition, and of the fact that such father, mother or guardian has notice of such application, and being further satisfied that such adoption will be to the interest of the child, to make an order declaring said child to be the adopted child of such person, and capable of inheriting his or her estate, and also what shall be the name of such child; and thenceforward the relation between such person and the adopted child shall be, as to their legal rights and liabilities, the same as if the relation of parent and child existed between them, except that

the adopted father or mother shall never inherit from the child; but to all other persons the adopted child shall stand related as if no such act of adoption had been taken.

"Sec. 2. It shall be the privilege of the guardian, or any other person, related by blood to such child, if there be no father or mother, to file objections to such application; and the court, after hearing the same, shall determine, in its discretion, whether or not the same constitute a good reason for refusing the application, and if so, such application shall be refused."

In the body of the act the word "minors" does not occur. It authorizes the adoption of a child, but it is manifest that the intention of the legislature was to authorize the adoption of such children, only, as were minors. In 1874 the subject was revised and a chapter was inserted in the Revised Statutes under the title, "An act to revise the law in relation to the adoption of children." (Rev. Stat. 1874, p. 128.) This act was much fuller in detail than that of 1867, but there is no change in the language indicating an intention to extend the right of adoption to any children not included in the statute of 1867. That statute gave to any person desirous of adopting a child so as to render it capable of inheriting his or her estate, the right to do so. The revised statute gave the right to any resident of this State to adopt a child not his own, and there is no phrase or word in the statute to indicate that the word "child" was used in any different sense from the same word in the previous act. Section 2 of chapter 131 of the Revised Statutes provides that the provisions of any statute, so far as they are the same as those of any prior statute, shall be construed as a continuation of such prior provisions and not as a new enactment, and it is a well settled rule of construction that in the revision of statutes neither an alteration in phraseology nor the omission or addition of words in the later statute shall be held necessarily to alter the construction of the former act, and the court shall only authorize the con-

struction of a statute, when revised, to be changed where
the intention of the legislature to make such change is clear
or the language used in the new act plainly requires such
change of construction. Nothing of the kind is found in
the act of 1874. The changes in the statute, so far as the
act of adoption is concerned, refer to the procedure, which
is fixed in greater detail, and the object seems to be to guard
particularly the interest of the child to be adopted. If the
petition for adoption was by a married person, the husband
or wife was required to join in it and the adoption was re-
quired to be by them jointly. This was not required in the
original act. The petition was required to state the names
and residence of the parents of the child, if known, and of
the guardian, if any, and whether the parents, or the sur-
vivor of them, or the guardian, consented to the application.
All that was required in the act of 1867 in this particular
was the name of the father, and the name of the mother
only if the father were dead or had abandoned his family,
and of the guardian, if any, if both were dead, and the
consent of the father, or, in case of his death, of the mother.
If the child had no father or mother, under the original act
the consent of no person was required to the adoption; but
in the revision, in case of the death of the parents the con-
sent of the guardian, or, if there were no guardian, the next
of kin in this State, if any, capable of giving consent, was
required, unless the child was a foundling. There was also
added in the revision the requirement that the court should
be satisfied that the petitioner was of sufficient ability to
bring up the child and furnish suitable nurture and educa-
tion. The revision contained the provision that if the child
was of the age of fourteen years or upward the adoption
should not be made without his consent, and the remaining
provisions of the act concern the rights and obligations aris-
ing out of the new relation created by the adoption.

It cannot be inferred from any of the terms of the re-
vised act that the court intended to enlarge the meaning of

the word "child" so as to include an adult. All its provisions indicate a child in a condition of tutelage, under the care of parents or guardian or relatives, or a foundling, and the requirement that the petitioner for adoption should be of sufficient ability to bring up the child and furnish suitable nurture and education would only apply to a child in the condition to require bringing up, nurture and education. The language of the statute is not hypothetical but absolute. These provisions are not made to apply if the child is an infant or is under the care of its parents or is in a condition of dependence, but purport to apply to every case of adoption. There is nothing in the language of the act seeming to make it applicable to adults, unless it is held that the word "child" itself necessarily includes adults. It manifestly did not include adults in the original act. It is clearly apparent that the intention of the legislature in passing that act was to provide for minors. Nowhere in the subsequent legislation is a purpose apparent to depart from, enlarge or restrict this intention, and counsel for the appellee do not attempt to point out any language which indicates such change of intention. It cannot be inferred from the mere change in the title. Such change cannot be held to indicate the clear intention on the part of the legislature necessary to require a change of construction of the act. The original construction is not inconsistent with the change of title.

There are, of course, two meanings which may be given to the word "child:" one an offspring or a descendant, when a person is spoken of in relation to his parents; another, a person of immature years. A reference to the subject matter and the context will ordinarily disclose the sense in which the word is used. The word "child," when used with reference to the parents, ordinarily has no reference to age but to the relation. When used without reference to the parents, as indicating a particular individual, it usually bears the meaning of a young person of immature years. In view of the original legislation in regard to adoption,

the language used, the conditions annexed in the original act and subsequently added in the revision of the law, it seems apparent that the motive of the legislature has been the care of minors who were deprived of the protection of parents, or whose parents and relatives were unable to give them the bringing up, nurture and education which they required. The statute was again amended in 1907, but the amendment in no way affects the construction of the statute in the respect which has been considered. (Hurd's Stat. 1916, p. 34.)

It is insisted on behalf of the appellee that the order of the county court is not subject to collateral attack and that the complainants were guilty of *laches.* Since the court had no jurisdiction to make any order on the petition, which showed on its face that the person proposed to be adopted was an adult, the order of the county court was void and was not the foundation of any right. It was subject to attack by any person at any time. No one was required to pay any attention to it and the doctrine of *laches* therefore does not apply. Neither do the cases apply which have been cited by the appellee from other jurisdictions. The language of the statutes construed by those decisions is different from our statute, and the construction given them is of no assistance in construing ours. In *Sheffield* v. *Franklin,* 151 Ala. 492, it was held that an adult might be adopted. The statute (Code of Alabama, vol. 2, p. 1122,) consisted of a single section, authorizing any person desirous of adopting a child so as to make it capable of inheriting his estate to do so by making and acknowledging a declaration of his intention, attested by two witnesses, which must be filed in the office of the probate judge and recorded on the minutes of his court. The court held that it was apparent that the intent of the section was to provide a means by which a person appoints as his heir the child of another. The statute has no other effect, imposes no obligations and confers no other privileges. Under the statute of Missouri

an adult may be adopted by a deed duly executed and recorded. (*In re Estate of Moran,* 151 Mo. 557.) The adoption in that case was under a section of the statute which, as in Alabama, had for its object the provision of a means of appointing an heir, and authorized anyone desiring to adopt a child as his heir to do so by deed executed, acknowledged and recorded in the county of his residence, as in case of the conveyance of real estate. (1 Mo. Rev. Stat. sec. 1671.) The statute gave the child adopted the rights and privileges, as to the person executing the deed, of a lawful child but gave no rights to the person executing the deed. Other sections of the statute provide for the adoption of minor children and of orphan children having no guardian upon application to the probate court, and we have not been referred to any decision that an adult may be adopted under such provisions. A decision of the Texas Civil Court of Appeals has been cited, to the effect that a person may adopt an adult as his legal heir. (*Mellville* v. *Wickham,* 169 S. W. Rep. 1123.) The Texas statute authorizes any person wishing to adopt another as his legal heir to do so. (1 McEachin's Texas Civil Stat. 79.) In the case of *Markover* v. *Krause,* 132 Ind. 294, the Supreme Court of Indiana was considering an adoption proceeding which was had in Ohio. After the death of both adopting parents and the majority of the adopted child a transcript of the record was filed in Washington county, Indiana, pursuant to a statute of the latter State which provided that upon such filing and entry upon the order book of the circuit court the adopted child should have the same rights as if the original adoption had occurred in Indiana. The court held that a compliance with the statute was in no sense a re-adoption, but simply enabled the adopted child to enforce such rights as arose out of the original adoption, and that it was not necessary that the record should be filed during the lifetime of the adoptive parents or during the minority of the adopted child. It is true that the court expressed the

276 – 33

opinion in argument that the provisions of the statute of Indiana for the adoption of children in that State applied to adults equally with infants, but it made no such decision, for that statute was not before it. In Rhode Island, with a statute very similar to ours, the word "child" was held to apply to minors, only, and jurisdiction was limited to the adoption of infants or minors. *In re Moore,* 14 R. I. 38.

On the hearing it was admitted by counsel for the appellants that since the revision of 1874 it has been the practice in the county court and circuit court of Cook county to enter decrees of adoption notwithstanding the persons to be adopted were more than twenty-one years of age, but that there is no record of any contest or objection having been made to any such petition for adoption. It is argued from this, on behalf of the appellee, that there has been a long continued construction by inferior courts of the State which should be followed. It is true that a long continued, uniform construction of a statute where the meaning is doubtful, by trial courts throughout the State, will be recognized and should have consideration by an appellate court in determining the proper construction of the statute, but this case is not within that rule. In view of the history of the legislation in question we do not regard the statute as of doubtful construction, and in such case the rule does not apply.

The appellee contends that the decree should be affirmed because no competent evidence was introduced or offered to prove Borden's insanity. The record shows that the appellants introduced a witness, and after showing his acquaintance with Borden asked him the question whether in his opinion Borden was sane or insane from 1900 until his death. The question was objected to as incompetent, irrelevant and immaterial, and thereupon the counsel for the appellants stated that he offered to prove that beginning with the year 1900, and until his death, Borden was insane, un-

able to understand the ordinary business transactions of life and was subject entirely to the will and domination of Mrs. Davies. The court sustained the objection, stating that he declined to receive this evidence, or any evidence of like character, on the ground that the decree of adoption of the county court could not be attacked in this collateral manner. This was a sufficient offer of proof. The question asked was not objected to on account of its form but for immateriality. It was not immaterial, for the insanity of the grantor in the deeds was an essential element of the appellants' case. The appellants could not prove their whole case by the testimony of one witness or the answer to one question, and when the court sustained an objection to a material question and announced that no evidence of that character would be received, it was not necessary for the appellants, in order to preserve their rights, to call all their witnesses and interrogate each one of them.

It is suggested that the appellants did not prove, or offer to prove, that Mrs. Davies knew Borden was insane. They could not prove that she knew he was insane if the court would not allow them to prove he was insane. They did show, and she admitted, that she had lived in his family a number of years, and if the appellants had been permitted to prove his insanity we cannot say that the chancellor would not have been justified, on the evidence, in finding that the appellee's relations with the testator were such that she must have known of it.

The decree of the circuit court will be reversed and the cause remanded. *Reversed and remanded.*

Mr. JUSTICE DUNCAN, dissenting.