(Nos. 42208, 43658 cons.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. WILLIAM BRIDGEFORTH *et al.*, Appellants.

*Opinion filed January 14, 1972.*

SCHAEFER, J., dissenting.

HOWARD T. SAVAGE and GEORGE C. HOWARD, both of Chicago, for appellant William Bridgeforth.

GERALD W. GETTY, Public Defender, of Chicago (MARY CAHILL and JAMES J. DOHERTY, Assistant Public Defenders, of counsel), for appellant Willie Davis.

WILLIAM J. SCOTT, Attorney General, of Springfield, and EDWARD V. HANRAHAN, State's Attorney, of Chicago (JAMES B. ZAGEL, Assistant Attorney General, and ROBERT A. NOVELLE, Assistant State's Attorney, of counsel), for the People.

MR. JUSTICE GOLDENHERSH delivered the opinion of the court:

Defendants, William Bridgeforth and Willie Davis, were convicted by a jury in the circuit court of Cook County of the offense of arson and sentenced respectively to not less than 5 nor more than 10 years and not less than 4 nor more than 8 years in the penitentiary. Their separate appeals have been consolidated for consideration and opinion.

The record shows that at approximately 1:30 P.M. on December 14, 1968, a fire occurred in an apartment building located at 609–611 East 50th Street in Chicago. Officer Butler of the police bomb and arson unit testified that his investigation revealed that the fire started on the rear porch of the second floor and spread upwards and downwards throughout the remaining areas of the building. Krista Porter, age 11, Jo Ann Falls, age 10, and Yusef Johnson, age 10, said they saw the defendants on the second floor back porch and saw Davis set a pile of trash afire. Joyce Johnson, age 12, saw the defendants standing next to the fire. Ella Fisher, an adult, saw the defendants in back of the building and watched Bridgeforth throw a bottle in the back door.

Defendant Bridgeforth testified that he is a real-estate broker and contractor and described the transaction in which he became the purchaser of the building where the fire occurred. He testified further that on December 14, 1968, at approximately 11:50 A.M. he met Davis and they went to a pawn shop at 47th Street and Prairie Street where Bridgeforth purchased a sewing machine. They met Willie Curtis at the pawn shop and the three left for Bridgeforth's office at 8014 South Ashland Avenue. Both Curtis and Bridgeforth testified that Bridgeforth had called Curtis and asked him to meet him at the pawn shop, and that Curtis went to Bridgeforth's office in order to see some plans and specifications for some construction work

he was to do for Bridgeforth. They arrived at the office about 1:30 P.M. and stayed there until 4:00 P.M. This alibi testimony was corroborated by Curtis, Bridgeforth's sister, Mae Hodge, who is a school teacher and works part time as his secretary and bookkeeper, and Leo Taylor, the proprietor of the pawn shop. Bridgeforth testified further that on December 2, 1968, he had executed and delivered to the contract vendor a quit-claim deed to the property and on December 14, 1968, the date of the fire, had no interest in the building.

As grounds for reversal Bridgeforth contends that count I of the indictment is fatally defective in that it fails to charge an offense under the Criminal Code (Ill.Rev.Stat. 1969, ch. 38, par. 1—1 *et seq.*) Count I charged the defendants with "arson, in that they by means of fire knowingly damaged the 50th St. Lawrence Building." He argues that "damaging a corporation is damaging a fictional entity, not real or personal property, and there is no such thing as consent of a building."

In *People v. Woodruff, 9 Ill.2d 429,* we held that the niceties and strictness of pleadings are required only to the extent that a defendant would be otherwise surprised at the trial or be unable to meet the charge or prepare his defense. Admittedly the indictment could have been drawn with greater precision, but that the defendants understood the charge and were not prejudiced by its alleged insufficiencies is evidenced by the fact that before trial the People and both defendants stipulated "that the building in question on this charge of arson was owned by the Fiftieth-St. Lawrence Building Corporation, Mrs. Sally Hill being President thereof." We hold that count I was sufficient to advise defendants of the statutory offense charged and to enable them to prepare their defense. *People v. Ross and Pawlak, 41 Ill.2d 445.*

Defendant Bridgeforth contends next that the judgment of guilty on count II of the indictment must be

reversed and the cause remanded for a new trial.

Count II charges the defendants with "arson in that they, by means of fire, knowingly damaged the personal property of Norma Jean Porter, having a value of more than one hundred fifty dollars ***." Bridgeforth argues that because count I is fatally defective and because the testimony of Norma Jean Porter does not prove the value of the personal property she lost in the fire, the jury may have convicted him on count II because it believed him guilty of count I, in which the value of the building was not material. This argument fails for the reasons that count I was not fatally defective, and the testimony of Norma Jean Porter is sufficient to sustain the conviction on count II.

Defendant Davis contends that the trial court abused its discretion in permitting 2 of the 4 children to testify without a sufficient showing of their competency. Defendant Bridgeforth makes the same contention with respect to all four of the children. No such objection was made at trial and the alleged error, therefore, was not preserved for review. *(People v. Matthews, 17 Ill.2d 502.)* However, because of the damaging effect of the testimony, and its obvious importance to the case, we elect to review defendants' contentions. In *People v. Davis, 10 Ill.2d 430,* in rejecting the contention that a witness who was 9 years of age at the time of the commission of the offense charged should not have been permitted to testify, the court, at pages 436-437, said: "We are unable to agree that it was error to permit her to testify. She was subjected to an examination by the court to determine her competency; the court found that the child had sufficient mental perception and moral understanding to qualify her to speak as a witness. If the witness was sufficiently mature to receive correct impressions by her senses, to recollect and narrate intelligently, and to appreciate the moral duty to tell the truth, she was competent. Not age, but the

degree of intelligence of a child, determines the question of the child's competency. *(Shannon v. Swanson, 208 Ill. 52; State v. Segerberg, 131 Conn. 546, 41 A.2d 101.)* In the case at bar the intelligence of the witness was ascertained, to some extent, by her appearance and conduct in the presence of the court, and it is only where there has been an abuse of discretion or a manifest misapprehension of some legal principle that a decision to admit such testimony will be reviewed. *(People v. Karpovich, 288 Ill. 268.)* We find no reason to disturb the court's determination that the witness was competent." Here, as in *Davis,* we find no reason to disturb the court's determination that each of the witnesses was competent.

Several issues raised by defendants concern the witness, Ella Fisher. The record shows that she is the sister of the defendant Davis and until December 13, 1968, had been a tenant in a building located at 605—607 E. 50th Street. A fire occurred in that building on December 13, and she spent that night with a friend on Drexel Boulevard. She was called to the stand by the defendant Bridgeforth, and upon her being called, defense counsel moved that she be made the court's witness for the reasons that she had been named as a possible State's witness, that she had signed the complaint against defendant Bridgeforth, that the police report indicated that she had told them that she had seen defendant Bridgeforth throw a "molotov cocktail" in order to start the fire, that there had been "bad blood" between Mrs. Fisher and the defendant Bridgeforth, and that fairness and justice demanded that she be called as the court's witness. The court refused to call her as the court's witness and she testified on behalf of the defendants. She testified that she had come to court without a subpoena, that she had been to the court house several times in connection with the case, that she was Davis's sister, and had first met Bridgeforth when he started collecting the rent at

605–607 E. 50th Street. She stated that on the afternoon of December 14, 1968, between 1:00 and 2:00 in the afternoon, she was in a drug store at the corner of 50th Street and St. Lawrence making a telephone call, and that after she left the drug store she went around into the alley behind 609 E. 50th Street because some women said "Bridgeforth was around the back of the house" and she went around to see what he was doing back there. When she got to the back she saw Bridgeforth and Davis coming out of the back of 609 E. 50th Street, and she saw Bridgeforth throw a bottle in the back door. He and Davis then went down the alley to Bridgeforth's car which was parked on St. Lawrence and drove away on 50th Street. She was approximately 10 or 12 feet away from Bridgeforth when he threw the bottle. There was considerable colloquy between the witness and defense counsel following which defense counsel, arguing that the witness had demonstrated her hostility, not only by her testimony, but by her demeanor, renewed his motion that she be called as a court's witness. The court, over the objection of the State's Attorney, permitted her to continue to testify, but as a court's witness.

On cross-examination by defense counsel she stated that she had made two statements to the police, one at the corner of 50th and St. Lawrence in front of the drug store and a later signed statement at the police station. She told the police that she had seen defendant Bridgeforth, but made no mention of Davis. When she testified before the grand jury she did not tell the grand jury that she had seen Davis at the rear of the building. In a later statement, in response to inquiries by the police, she mentioned that her brother also had been present with Bridgeforth. She testified about difficulties with Bridgeforth in connection with the payment of rent and discussions with respect to rent, lights, heat and Bridgeforth's alleged failure to furnish hot water.

Both defendants argue that the People's unexplained failure to call Ella Fisher as a witness raises an inference that her testimony would be unfavorable to the People's case. In view of the fact that she testified, and her testimony is unfavorable to defendants we need not and do not draw any inferences from the People's failure to call her. Were we to engage in speculation, the reason for the failure to call her is most probably the fact that she is the sister of defendant Davis.

Defendant Bridgeforth contends that the trial court erred by initially refusing to call Ella Fisher as the court's witness. It was not an abuse of discretion to refuse to call Ella Fisher as the court's witness until some hostility to the defendants became apparent. *(People v. Collins, 25 Ill.2d 605; People v. Crump, 5 Ill.2d 251.)* When the witness's hostility to the defense became apparent, the court made her its witness, the defendants were given the opportunity to cross-examine her, and there is no showing of prejudice by reason of the refusal to make her the court's witness at any earlier point in her testimony.

Both defendants contend that the trial court committed reversible error in refusing to admit into evidence certain records of the Cook County Department of Public Aid. A supervisor of the Department testified that he appeared and testified in response to a subpoena served at defendants' request and that he had with him the Department's records concerning Ella Fisher. He advised the court that the records were confidential under the provisions of section 602(a)(9) of the Needy Families with Children Aid and Services Acts (42 U.S.C.A., sec. 602(a)(9)) which provides: "A State plan for aid and services to needy families with children must *** provide safeguards which restrict the use or disclosure of information concerning applicants and recipients to purposes directly connected with the administration of aid to families with dependent children *** ", and section 11—9

of the Illinois Public Aid Code (Ill.Rev.Stat. 1969, ch. 23, par. 11—9) which provides:

> "For the protection of applicants and recipients, the Illinois Department, the county departments and local governmental units and their respective officers and employees are prohibited, except as hereinafter provided, from disclosing the contents of any records, files, papers and communications, except for purposes directly connected with the administration of public aid under this code.

> "In any judicial proceeding, except a proceeding directly concerned with the administration of programs provided for in this Code, or in which the applicant or recipient is a party thereto, such records, files, papers and communications, and their contents shall be deemed privileged communications."

The trial court held that the records were confidential and did not admit them into evidence. After this ruling by the trial court, defense counsel stated for the record that he had also subpoenaed the public aid records of Joyce Johnson, Yusef Johnson and Jo Ann Falls, three of the children who testified for the prosecution. It is defendants' contention that the exclusion of the records was prejudicial in that it prevented their showing that some of the witnesses, as recipients of public aid, benefited financially as the result of the fire, and that this benefit was their motive for testifying against the defendants.

Defendants concede that section 11—9 of the Public Aid Code provides that the records in question are privileged. They argue, however, that this provision is unconstitutional under the circumstances of this case because it deprives them of their right to have compulsory process for obtaining witnesses in their favor as guaranteed by the sixth amendment. They cite *Washington v. Texas,*

*388 U.S. 14, 18 L.Ed.2d 1019, 87 S.Ct. 1920,* in support of this contention.

*Washington* involved a Texas statute which provided that persons charged as principals, accomplices, or accessories in the same crime "can not be introduced as witnesses for one another." The Supreme Court held that the statute which arbitrarily denied a defendant the right to call a witness who was physically and mentally capable of testifying to events that he had personally observed and whose testimony would have been relevant and material to the defense deprived him of his constitutional right to have compulsory process for obtaining witnesses in his favor. The court was careful to point out in a footnote to this holding, however, that:"Nothing in this opinion should be construed as disapproving testimonial privileges, such as the privilege against self-incrimination or the lawyer-client or husband-wife privileges, which are based on entirely different considerations from those underlying the common-law disqualifications for interest." 388 U.S. 14, 23, n. 21.

The statutory provisions which defendants attack appear to be designed to induce full and frank disclosure by applicants and recipients. Analogous provisions are found in 45 U.S.C.A. 41 and 49 U.S.C.A. 1441(e) which, respectively, provide that reports of railroad accidents made to the Interstate Commerce Commission and of aircraft accidents made to the Civil Aeronautics Board shall not be admissible in actions for damages arising out of occurrences covered by the reports. In our opinion the provisions of section 11—9 are not unreasonable and the statute does not violate defendants' constitutional right to have compulsory process for obtaining the attendance of witnesses favorable to them. Furthermore, we are not persuaded by defendants' contention that these public aid records were the only means of showing that some of the witnesses may have benefited financially from the fire. Norma Jean Porter, owner of the property described in

count II of the indictment, testified on direct examination that she sustained a loss of at least $200, maybe more. On cross-examination it was brought out that she had received $348 in cash for furniture and $800 in disbursements for clothing for her and her children as reimbursements for her damages.

Both defendants contend that the trial court committed reversible error in refusing to permit them to call Maggie Davis as a witness because she had violated the court's order excluding witnesses. The record shows that in chambers the assistant State's Attorney told the court that he saw Mrs. Davis in the courtroom while testimony was being given; Maggie Davis said she was not in the courtroom at all; and the defense attorney said she was in the courtroom during recesses but not while testimony was being taken. Upon examination of the record we cannot say that the court's finding that the proposed witness was present when testimony was given is erroneous.

Defendants argue that the exclusion of Maggie Davis as a witness deprived them of their right to compulsory process for obtaining witnesses in their favor as guaranteed by the sixth amendment. They cite *Washington v. Texas, 388 U.S. 14, 18 L.Ed.2d 1019, 87 S.Ct. 1920,* in support of this contention.

In our opinion, however, such a holding is not required by any decision of the Supreme Court of which we are aware. In *Braswell v. Florida, 400 U.S. 873, 27 L.Ed.2d 111, 91 S.Ct. 106,* the trial court refused to permit a criminal defendant to call a witness because the proposed witness had violated the "Witness Rule." The proposed witness, who had arrived after the court's instruction and had not heard it, and who, unknown to the defendant or his counsel, had heard some of the prosecution's evidence, was not permitted to testify, although it was alleged he would give material testimony. The Supreme Court denied the petition for writ of *certiorari* with three Justices dissenting. The dissenting Justices supported

defendants' contention when they stated: "While the 'Witness Rule' has a valid purpose and can contribute to the search for truth, a breach of the rule cannot be used to deny a criminal defendant his constitutional right to obtain and present witnesses in his favor. U.S. Const. Amend. VI; cf. Washington v. Texas, 388 U.S. 14, 18 L.Ed.2d 1019, 87 S.Ct. 1920, (1967)." The majority of the Supreme Court did not, however, adopt this rationale.

Defendants argue that we should adopt the Federal view as expressed in *Holder v. United States, 150 U.S. 91, 37 L.Ed. 1010, 14 S.Ct. 10,* and *United States v. Schaefer (7th cir.), 299 F.2d 625.* In *Holder* the Supreme Court stated: "If a witness disobeys the order of withdrawal, while he may be proceeded against for contempt and his testimony is open to comment to the jury by reason of his conduct, he is not thereby disqualified, and the weight of authority is that he cannot be excluded on that ground, merely, although the right to exclude under particular circumstances may be supported as within the sound discretion of the trial court." (150 U.S. 91, 92.) In *Schaefer* the court stated: "[W]e interpret *Holder* to mean the court may not disqualify the witness merely because he disobeys the rule but that this alternative is available if particular circumstances are shown. From the better reasoned state court decisions we interpret these particular circumstances to mean some indication the witness was in court with 'the consent, connivance, procurement or knowledge of the appellant or his counsel.'" 299 F.2d 625, 631.

It is settled in this State that it is within the sound discretion of the trial judge to permit a witness to testify who has violated an order excluding witnesses, and that the exercise of this discretion will not be disturbed on review unless it is made to appear that the party offering the witness has been deprived of material testimony without his fault. *(People v. Hairston, 46 Ill.2d 348; People v. Raby, 40 Ill.2d 392; People v. Scott, 38 Ill.2d 302.)*

Defendants argue that they were, in fact, deprived of material testimony without their fault. We note initially that there was no offer of proof as to what testimony Maggie Davis would have given. Assuming, *arguendo,* however, as defendants now assert, that she would have testified that Ella Fisher had told her that she lied when she said she saw defendants at the fire, we do not find the exclusion of the evidence so prejudicial as to require reversal. The record demonstrates beyond question Ella Fisher's hostility toward defendant Bridgeforth; the fact that she is the sister and Mrs. Davis the mother of defendant Davis is undisputed, and the cross-examination conveyed to the jury the inference of prior inconsistent statements and the "message" that Ella Fisher is no paragon of veracity. In the absence of an offer of proof, and upon this record, we are not prepared to say that in excluding the testimony the trial court abused its discretion.

A number of contentions are made by defendants as to the trial court's rulings with respect to the scope and examination of certain witnesses. One of these deals with the question of whether the cross-examination of Ella Fisher laid a sufficient foundation for the impeaching testimony of Maggie Davis. In view of our holding that in excluding her as a witness the trial court did not abuse its discretion, we do not further discuss this contention.

It is also argued that the trial court prevented defendants from demonstrating the hostility of Ella Fisher toward Bridgeforth. On cross-examination by defense counsel she denied she knew that her two sons had attacked Bridgeforth on the street, denied that she had an argument with him before December 13, 1968, and denied that she had threatened him with a gun in August, 1968. The court permitted Bridgeforth to testify that Ella Fisher had organized a rent strike against him in August, 1968, that she had threatened to "blow his brains out" because he turned off the electricity for her apartment and that she told him she had shot another tenant's son.

The latitude to be allowed in the cross-examination of a witness rests largely in the discretion of the trial court, and it is only in a case of an abuse of such discretion resulting in prejudice to a defendant that a reviewing court will interfere. *(People v. Halteman, 10 Ill.2d 74.)* Here there was an abundance of testimony showing the hostility of Ella Fisher to Bridgeforth and the trial court did not abuse its discretion in excluding the details of a fight Bridgeforth had with her sons or her shooting of a tenant's son.

Defendant Bridgeforth also complains that his cross-examination of Krista Porter was unduly restricted. She testified that there had not been a fire in the building before this fire. She was then asked if there had been a fire in an adjoining building a day or so before and she answered "yes." She was then asked if there had been a fire in one of the apartments on the corner about 3 weeks before that. Objection to this question was sustained. He now argues that he had intended to show "that tenants had habitually fired their own apartment in order to make exorbitant loss claims upon the Department of Public Aid and to bring about relocation into other housing than in this complex where there was constant trouble with heat and electricity and trash." Assuming, without deciding, that the fact that tenants in other buildings in the neighborhood had set their apartments afire was relevant, there was no offer of proof that defendant could or would establish this fact.

It is then alleged that Bridgeforth was not permitted to show by cross-examination of Yusef Johnson the time that had transpired before he first talked to police about the fire. The boy testified that after the fire he lived with his sister for two days, that he then moved into a housing project and that he gave the police a statement after he had moved into the project. The witness's statement given to defense counsel showed it was made in December. The witness could not state the exact date he first talked to

police, but defendant, nevertheless, showed that the boy did not tell the police about it for several days.

Bridgeforth then contends that Ella Fisher was permitted, over objection, to condemn him before the jury as a landlord who failed to provide heat for his tenants and deliberately shut off her electricity because she stopped her rent payments. He also asserts that the prosecution belittled him before the jury by cross-examining him about his construction and real estate businesses and the lack of repair and maintenance on his building. The answer to these contentions is that Bridgeforth himself had injected these matters into the trial by his prior examination of Ella Fisher and by his own testimony. He cannot complain about lines of inquiry which he himself initiated. *People v. Ault, 28 Ill.2d 34.*

Finally, both defendants argue that they were not proved guilty beyond a reasonable doubt. The substance of this argument is that the prosecution witnesses gave conflicting and unbelievable accounts of what they observed. Krista Porter, a resident of the building, knew the defendants because Bridgeforth collected the rent and Davis was the janitor. She was on the back porch of the first floor where a stairwell extends up to the rear porches of each of the three floors of the building. She looked up through a foot-long hole in the floor of the second-story porch and saw Davis pour a liquid which smelled like gasoline on some trash. She heard Bridgeforth tell Davis to strike a match and light the trash, which he did. When the fire started defendants ran down the stairs and the witness and her playmates ran to the building next door. They watched defendants as they ran from the building and drove away in Bridgeforth's automobile. The testimony of Jo Ann Falls is substantially to the same effect.

Yusef Johnson and his sister, Joyce Johnson, were on the third floor back porch. They also lived in the building and knew the defendants. Yusef said he saw Davis set the pile of trash on the second floor porch afire. Joyce said she

saw both defendants standing next to the fire. Ella Fisher testified that she saw defendants in the back yard of the building and saw Bridgeforth throw a bottle through the back door.

Defendants argue that it was physically impossible for Krista Porter and Jo Ann Falls to have observed defendants through a hole in the floor of the second story porch or for Yusef and Joyce Johnson to have observed them from the third floor. Defendants also contend that the girls had first told the police they saw the defendants through a window when they were in the back yard and Krista told the police she saw Bridgeforth pour the gasoline.

Photographs of the back porches and the enclosed stairwell were introduced in evidence. The jury saw the photographs and heard the witnesses refer to them and describe where they were when they observed the defendants. We are of the opinion that there was sufficient credible evidence to prove defendants guilty beyond a reasonable doubt. We find no reversible error and the judgments of the circuit court of Cook County are accordingly affirmed.

*Judgments affirmed.*

MR. JUSTICE SCHAEFER, dissenting:

The statutory privilege was applied in this case to bar the defendants from showing the extent to which those witnesses whose testimony was most damaging to them had profited by reason of the fire, and in my opinion that privilege, so applied, deprived them of due process of law. Any legitimate purpose served by the privilege could be fully achieved without extending its scope to criminal cases. The situation here does not seem to me to be at all analogous to the Federal statutes which protect required accident reports from disclosure in civil actions for damages.

I am also of the opinion that the defendants'

due-process rights were violated when the trial court refused to permit the defendants to call Maggie Davis as a witness. And since the trial court was unwilling to hear *any* testimony from Maggie Davis, I do not understand why an offer of proof, on which the court insists, was even appropriate, much less essential. *Bartholow v. Davies (1916), 276 Ill. 505, 515.*

Even apart from these errors, both of which cut off evidence favorable to the defendants, I am not satisfied that their guilt was proved beyond a reasonable doubt.