THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
RICHARD COWEN, Defendant-Appellant.

First District (5th Division)    No. 77-1727

Opinion filed January 19, 1979.

Belmonte, Kagan, Hibbler & De Palma, of Chicago (William J. Hibbler and Richard J. Belmonte, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger and Kenneth L. Gillis, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

In a bench trial, defendant was convicted of murder and sentenced to a term of 14 to 42 years. On appeal, he contends that (1) the court committed reversible error by allowing an 11-year-old witness to testify without first conducting a competency hearing; and (2) his conviction was not established beyond a reasonable doubt and should be reduced to either of the lesser-included offenses of voluntary manslaughter or involuntary manslaughter and his sentence modified accordingly.

Tyre Bias, age 11, testified that he was in a vacant lot behind the building in which he lived when he observed three boys whom he believed to be about 17 years old attempting to break into several cars, including his father's and defendant's; that he ran into his grandmother's building and telephoned his father and then ran to the second floor where, upon looking out of the window, he saw defendant on the third-floor fire escape with a gun; that when defendant hollered something to the boys, two of them ran away but the third stayed by the side of the car owned by defendant; that defendant fired once, and he saw the boy fall; that he did not see any of the three boys throw anything at defendant or shoot at him; and that after the police arrived, he saw a screwdriver in the deceased's hand.

Officer Charles Harris testified that he responded to a radio call of a man shot at 5924 Halsted; that after a short conversation with people in the area, he went to the third floor of the building at that address looking for an individual named Richard; and that he knocked on the door and was admitted by defendant, who stated his name was not Richard. Nevertheless, the officer placed him under arrest and, after advising him of his constitutional rights, asked whether he wanted to make a statement. Defendant responded that he had fired a shotgun at some boys who were tampering with his car downstairs and that the shotgun was in the apartment of Victor Jones, where he had taken it after the shooting. Defendant telephoned Jones who, when he brought the loaded shotgun to the police officers, said that when defendant gave him the shotgun he (defendant) indicated that he might have shot someone.

Officer Thomas Ptak testified to a conversation with defendant at the police station after advising him of his constitutional rights. Defendant told him his neighbor, Victor Jones, had come to his apartment and told him that someone had been tampering with the cars in the back of the building; that he walked out onto the fire escape on the third floor landing and shouted to the boys to get away from the car; that he then went into his apartment, got a 12-gauge shotgun, and returned to the fire escape, where he once again shouted to the boys; that one of the three fired at him and he, in return, fired the shotgun at them; that he then took the shotgun

to the apartment of Victor Jones; that he told Jones he thought he had shot someone and asked him to hide the shotgun because the police would probably be asking questions.

Subsequently, Officer Ptak was present during a conversation between an assistant State's Attorney (Michael Epton) and defendant, wherein Epton advised defendant of his constitutional rights and, when Epton then asked what had happened, defendant related the same story he had told earlier but stated that he fired at the deceased as the latter was walking away from the car.

Officer Ptak also testified he later returned to the vicinity of the shooting and searched for indications of a shot being fired from the location of the car, but he was not able to find any.

It was stipulated that, if called, a coroner's pathologist would testify the cause of death of Robert Love, age 14, was shotgun pellet wounds of the head, shoulder and neck.

Victor Jones testified that he received a telephone call from his son, Tyre Bias, and went to the back of the building but did not see anyone there; that he knocked on defendant's door and told him someone might be breaking into his car; and that shortly thereafter he heard a sound which he thought might have been a backfire.

Defendant testified that after Victor Jones knocked on his door, he grabbed a gun and went out on the fire escape; that he saw three boys standing around his car and yelled for them to leave the car alone; that one of them threw something which did not strike him; and that a shot was then fired at him and he took his gun out to scare them away; that two of the boys ran down the alley and the third, who remained behind, had something in his hand but he could not tell whether it was a gun. In his direct testimony, defendant said that he fired the gun after the shot had been fired at him but, on another occasion, said he fired after two of the boys ran away. Then, on cross-examination, he stated that after the shot was fired at him, he picked up his gun, knocked the safety off, and pulled the trigger before the two boys ran away.

Defendant testified that he believed he was telling the officer the truth when he denied doing the shooting, because he did not know that he had hit anyone. He also denied telling Jones that he had shot someone. He testified the assistant State's Attorney was the first person to advise him of his constitutional rights, and he denied having seen Officer Ptak prior to trial.

Five persons testified to defendant's good reputation in the community.

Michael Epton, called in rebuttal, testified that he had interviewed defendant in the presence of Officer Ptak and that defendant told him he previously had been advised of his constitutional rights by police officers.

Officer Charles Harris testified in rebuttal that when he knocked on the door and asked whether defendant's name was Richard, the latter replied negatively; and that he advised defendant of his constitutional rights. Officer Ptak also testified on rebuttal that he had advised defendant of his constitutional rights.

OPINION

■■ Defendant first contends that the failure of the trial court to conduct a competency hearing of the 11-year-old witness, Tyre Bias, was reversible error. We note, however, that no request was made by defendant for a preliminary competency examination and that no question was raised as to the competency of the witness either during trial or in the motion for a new trial. Under such circumstances, defendant must be deemed to have waived the issue. *People v. Precup* (1978), 73 Ill. 2d 7, 382 N.E.2d 227; *People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856; *People v. Montgomery* (1972), 51 Ill. 2d 198, 203-04, 282 N.E.2d 138, 141.

Nevertheless, we will consider the merits of this contention under the authority of *People v. Bridgeforth* (1972), 51 Ill. 2d 52, 281 N.E.2d 617, *appeal dismissed* (1972), 409 U.S. 811, 34 L. Ed. 2d 66, 93 S. Ct. 100, 190, where the court reviewed a question as to the competency of three witnesses from 10 to 12 years of age, despite the fact that there had been no objection to their competency at trial "because of the damaging effect of the testimony, and its obvious importance to the case." (51 Ill. 2d 52, 56, 281 N.E.2d 617, 620.) The court in *Bridgeforth* quoted as follows from *People v. Davis* (1957), 10 Ill. 2d 430, 436, 140 N.E.2d 675, 680, *cert. denied* (1957), 355 U.S. 820, 2 L. Ed. 2d 35, 78 S. Ct. 25:

"If the witness was sufficiently mature to receive correct impressions by her senses, to recollect and narrate intelligently, and to appreciate the moral duty to tell the truth, she was competent. Not age, but the degree of intelligence of a child, determines the question of the child's competency. [Citations.]" (51 Ill. 2d 52, 56-57, 281 N.E.2d 617, 620.)

Following which, the *Bridgeforth* court stated:

"In the case at bar the intelligence of the witness was ascertained, to some extent, by her appearance and conduct in the presence of the court, and it is only where there has been an abuse of discretion or a manifest misapprehension of some legal principle that a decision to admit such testimony will be reviewed. [Citation.]" (51 Ill. 2d 52, 57, 281 N.E.2d 617, 620.)

In the instant case, we have reviewed the record and, from the answers of the witness during 22 pages of direct and cross-examinations, believe he displayed the intelligence and understanding required by *Bridgeforth*,

and we find that the discrepancies in his testimony complained of by defendant were inconsequential.

■■ For the reason stated, we reject defendant's contention that reversible error resulted because a preliminary hearing as to competency was not held. Our opinion in this regard is buttressed not only by the fact that defendant's trial counsel made no objection either at trial or in the motion for new trial which was indicative at least of his belief that the witness was competent, but also because he made no effort in cross-examination to demonstrate incompetency and in closing argument stated that the witness "testified well for his age."

Defendant next contends he was not proved guilty beyond a reasonable doubt because there was no showing of malice sufficient to support a murder conviction. Alternatively, he argues that the evidence justifies only a finding of recklessness sufficient to support an involuntary manslaughter conviction and that, even were we to determine that defendant intended to shoot the deceased, the record shows the provocation was such that he was at most guilty of voluntary manslaughter.

■■ Murder and the lesser included offense of involuntary manslaughter are distinguished only in terms of the mental state required. Murder requires the intent to kill or do great bodily harm or knowledge that the acts create a strong probability of such result, while involuntary manslaughter requires only reckless conduct which causes death. (*People v. Bembroy* (1972), 4 Ill. App. 3d 522, 525, 281 N.E.2d 389, 392.) "Voluntary manslaughter occurs only where defendant's actions are caused by serious provocation or where defendant believes his actions to be justified and such belief is unreasonable." *People v. Wright* (1975), 32 Ill. App. 3d 736, 745, 336 N.E.2d 18.

■■ With respect to the showing of malice, it was stated in *People v. Walden* (1976), 43 Ill. App. 3d 744, 750, 357 N.E.2d 232, 239, as follows:

"To justify a conviction of murder, it is not necessary to show that the accused deliberately formed the intent to kill, but it is sufficient to imply intent to murder by showing that he voluntarily and willfully committed an act, the direct and natural tendency of which was to destroy another's life. (*People v. Davis* (1966), 35 Ill. 2d 55, 219 N.E.2d 468; *People v. Boisvert* (1975), 27 Ill. App. 3d 35, 325 N.E.2d 644.) In response to defendant's instant argument, it hardly need be pointed out that hostility or animosity is not an essential element of murder. (*People v. Forrest* (1971), 133 Ill. App. 2d 70, 272 N.E.2d 813.) However, while malice is an essential element of murder, it may be expressed or implied (*People v. Dampher* (1963), 28 Ill. 2d 136, 190 N.E.2d 705; *People v. Muldrow*

(1975), 30 Ill. App. 3d 209, 332 N.E.2d 664), and it will be implied where the acts of the defendant exhibit a wanton and reckless disregard for human life (*People v. Dampher; People v. Forrest* (1971), 133 Ill. App. 2d 70, 272 N.E.2d 813; *People v. Brooks* (1964), 52 Ill. App. 2d 473, 202 N.E.2d 265)."

In the instant case, it was defendant's testimony that he did not intend to shoot the boys but fired the gun only to scare them and then only after something had been thrown in his direction and a shot fired at him by companions of the deceased. He points out also that there was only a single firing of the shotgun which was a weapon of limited accuracy, and he argues that there was sufficient provocation to negate any finding of implied malice. The State maintains, however, that implied malice is apparent because defendant fired a 12-gauge shotgun from a third-floor fire escape while about 50 feet from the deceased; because a witness, Tyre Bias, testified that he heard no shot fired by the boys nor did he see any of them throw anything at defendant; and because the gun necessarily was fired in the direction of the deceased, as he received shotgun pellet wounds to his head, shoulder and neck from which he died. Where the evidence is conflicting, it is for the trier of fact to determine whether a homicide is murder or manslaughter. Because we believe the evidence justifies a finding of implied malice (see *People v. Davis*), we conclude that the record supports the conviction of murder, and we reject defendant's argument that the conviction should be reduced to either involuntary or voluntary manslaughter. Accordingly, defendant's conviction is affirmed.

Affirmed.

LORENZ and WILSON, JJ., concur.