The People of the State of Illinois, Plaintiff-Appellee, v. Roscoe Nelson and Hezekiah Jackson, Defendants-Appellants.

Gen. Nos. 51,124, 51,125.

First District, Second Division.

November 17, 1967.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Paul Bradley and James J. Doherty, Assistant Public Defenders, of counsel), for appellants.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Robert A. Novelle, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE BRYANT delivered the opinion of the court.

Roscoe Nelson and Hezekiah Jackson were convicted in a jury trial of attempted robbery and sentenced to three to five years in the Illinois State penitentiary. On appeal appellants raise three contentions: (1) the trial court erred in not granting their motion for directed verdict since evidence of the crime charged was insufficient as to Jackson and totally lacking as to Nelson; (2) rulings of the trial court deprived defendants of a fair trial; and (3) remarks of the State's Attorney in the presence of the jury deprived defendant of a fair trial.

The events upon which these convictions were based occurred on September 20, 1963, at approximately 12:45 p. m. near 63rd Place and Union Avenue, Chicago, Illinois.

The State's witnesses were Chicago Police Officers, William O'Brien, Edward Kodatt and James Peebles. The officers testified to the following version of the occurrence. The three police officers were on duty together. Officer O'Brien was standing on the north side of 63rd Place, approximately fifteen feet east of Union Avenue. Officers Kodatt and Peebles were sitting in an automobile on Union Avenue facing north on the east side of the street about forty feet south of 63rd Place. O'Brien saw three men approaching 63rd Place on Union Avenue from the north. Two of the men, who were identified in court as Nelson and Jackson, walked together. The third, who was identified as George Hammond, followed at a distance of five to seven feet. When the men reached 63rd Place they turned and walked east, continuing on past O'Brien about forty or fifty feet. Nelson and Jackson sat down on a railing. Hammond turned around and returned past O'Brien, made a proposition to do an unnatural act, which O'Brien declined, and continued on past O'Brien two or three feet. At that point the man turned back toward O'Brien with a knife in his hand which he put to O'Brien's throat and said, "You white M.F., I want all your money." When Hammond put the knife to O'Brien's throat Nelson and Jackson ran up and began striking O'Brien. O'Brien stepped back, stated that he was a police officer and drew his gun. Hammond then dropped his knife and ran southwest toward a parking lot. O'Brien pursued Hammond, fired two warning shots which Hammond failed to heed and then fired a third shot which struck Hammond in the ear. Hammond then fell to the ground and was apprehended.

When officers Peebles and Kodatt observed Nelson and Jackson begin to strike at O'Brien they left the vehicle in which they had been seated and ran to his aid. By the time these officers reached the corner

of 63rd Place and Union Avenue the three men were in flight. Kodatt joined O'Brien in capturing Hammond. Peebles pursued Nelson and Jackson who were running east on 63rd Place. Peebles arrested Jackson but Nelson escaped. After Jackson and Peebles returned to 63rd Place and Union Avenue Peebles asked Jackson where his partner had gone. Jackson answered that he and Nelson had been sleeping in a car in a parking lot and that Nelson might be found there. The officers went to the car indicated by Jackson where they found Nelson lying on the floor and arrested him. The officers then returned to the scene of the crime and recovered the knife used by Hammond.

At the police station Jackson and Nelson were questioned. Jackson said that he and Nelson had recently come to the city together. They met Hammond who suggested that the three might find someone to rob. Jackson admitted his participation in the robbery attempt. Nelson remained silent. Hammond maintained that he had not seen Nelson and Jackson before he saw them on the street near O'Brien and that suspecting they were about to rob O'Brien he had gone to give aid to the latter.

At trial Hammond testified that he had been in the 63rd Place and Union Avenue area to visit a friend. On his way to his automobile he noticed O'Brien who appeared to be drunk. He also saw two strangers whom he thought were about to rob O'Brien. When he attempted to warn O'Brien, the latter drew his gun on him and two other officers came and began to beat and kick him.

At trial, Jackson denied ever having made any admissions and denied that he had identified Hammond as an associate. Jackson and Nelson claimed that they were innocent bystanders when Hammond attempted to rob O'Brien. Nelson testified that he and Jackson were near the corner when they heard O'Brien shout. They

turned around and saw O'Brien with his gun pointed at Hammond. Nelson told Jackson to "come on," because he didn't want to get involved. Both walked slowly on but Jackson lagged behind. A short time later officer Peebles ran up and placed Jackson under arrest. Jackson then took the officers to a car outside the building where he and Nelson had been staying. Nelson was found in the car and arrested.

Hammond, Jackson and Nelson were convicted of attempt to commit robbery. This appeal is prosecuted by Jackson and Nelson.

 The first contention is that the trial court should have given a directed verdict for appellants because there was no evidence of attempt to commit robbery as to Nelson and insufficient evidence to sustain a conviction of Jackson. We cannot accept this contention. The testimony of officers O'Brien and Kodatt, if accepted as true, is sufficient to prove appellants guilt beyond a reasonable doubt. Appellants walked past O'Brien with Hammond and then paused nearby while Hammond returned to O'Brien. Immediately after Hammond placed his knife to O'Brien's throat and demanded all his money the appellants pounced upon O'Brien and began to beat him. Appellants argue that neither their intent to commit other than a battery upon O'Brien nor their association with Hammond is shown by this evidence. A specific demand for money is not necessary to prove intent to rob. People v. Leahy, 295 Ill 588, 593, 129 NE 517, (1921). "Although intent is a matter of fact and cannot be implied as a matter of law, criminal intent may be shown by circumstantial evidence." People v. Perry, 23 Ill 2d 147, 154, 177 NE2d 323, (1961). ". . . (C)ircumstances may show there is a common design to do an unlawful act to which all assent, and whatever is done in furtherance of the design is the act of all, making each person guilty of the crime." People v. Washington, 26

Ill2d 207, 209, 186 NE2d 259, (1962). In addition to the officers' testimony as to the crime itself there was also evidence of Jackson's police station admissions directly involving Nelson and himself with Hammond in the robbery attempt. Sufficient evidence to support convictions of appellants was admitted.

██ ██ It is contended that certain rulings of the court deprived appellants of a fair trial. Appellants cite as error the court's refusal to allow the defense to call as a witness Mr. Zimmerman, one of two State's attorneys prosecuting the case. Appellants direct our attention to several Illinois cases holding proper the introduction of a prosecuting attorney's testimony by the State. The situation in the instant case is, however, unusual in that the defense rather than the prosecution sought admission of the prosecuting attorney's testimony. We are unable to locate Illinois authorities on this precise issue. It is clear that a State's attorney is not rendered incompetent as a witness simply because he is prosecuting the case. People v. Gerold, 265 Ill 448, 480, 107 NE 165, (1914) ; People v. Schraeberg, 347 Ill 392, 179 NE 829, (1932). It is also clear, however, that courts do not look with favor upon the introduction of testimony of a prosecuting attorney by either the State or the defense. See Annot 149 ALR 1305 (1944), 97 CJS Witnesses § 113 (1957). The propriety of allowing the prosecutor to testify is a matter largely within the discretion of the trial court. In Gajewski v. United States, 321 F2d 261, at 268, (1963), the court addressed itself to this problem, stating:

> "Generally, a trial court has wide discretion respecting examination of witnesses. (Citing cases.) More particularly, under appropriate circumstances, a court may refuse to even allow a witness to take the stand. (Citing cases.) Courts are especially reluctant, and rightfully so, to allow lawyers, including prosecuting attorneys, to be called as witnesses in

trials in which they are advocates. (Citations.) Although, as the above authorities indicate, such judicial discretion is generally exercised to prevent testimony by an advocate in *favor* of the party whom he represents, a court may, without abusing its discretion, refuse to allow the *defense* to call as a witness the United States Attorney trying the case. Fisher v. United States, 9 Cir, 231 F2d 99, 104 (1956)."

The Eighth Circuit held in Gajewski that it was not an abuse of discretion for the trial court to have required an indication in advance by the defendant of the general nature of the testimony he desired to elicit from the United States Attorney.

█ In the instant case defense counsel would tell the court only that he wished to call Mr. Zimmerman for the purpose of impeaching some other witnesses in the case. Counsel refused to make an offer of proof which would have demonstrated the necessity of calling specifically State's Attorney Zimmerman or would have indicated the nature of the impeachment he hoped to accomplish through Zimmerman's testimony. It was not an abuse of the trial court's discretion to have required that much of the defense.

We have examined other errors alleged by appellants in the trial court's rulings or failure to rule. In all instances we find that the court gave adequate and proper rulings upon objections made by appellants' counsel.

Finally, the appellants argue that remarks of the State's Attorneys were prejudicial and had the effect of depriving appellants of a fair trial. We have examined the remarks cited and find that they were not prejudicial or, if prejudicial, not substantially so.

The judgments are affirmed.

Judgments affirmed.

LYONS, P. J. and BURKE, J., concur.