THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* NATHANIEL ALLEN, Defendant-Appellant.

Second District   No. 76-526

Opinion filed May 25, 1978.

. Mary Robinson and Daniel Cummings, both of State Appellate Defender's Office, of Elgin, for appellant.

Gerry L. Dondanville, State's Attorney, of Geneva (Phyllis J. Perko and Jan Tuckerman, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE NASH delivered the opinion of the court:

After trial by jury defendant, Nathaniel Allen, was convicted of armed robbery and sentenced to 8 to 15 years imprisonment. He appeals, contending the trial court erred in allowing an in-court identification of him; in admitting into evidence a pair of pants with the name "Allen" written inside a pocket; and in allowing the prosecutor to improperly bolster the testimony of a witness. The defendant also contends his right to a fair trial was denied when the prosecutor made improper comments in his closing argument and openly prayed in the courtroom while the trial court instructed the jury. Additionally, he argues that the trial court in imposing sentence considered information which had no basis in the evidence.

On June 4, 1975, at approximately 11:15 a.m., a tall, black man entered the Hills Brothers Shoe Store in Aurora. The manager, Gregory Jones, who was standing near the front of the store at the cash register, saw the man walk to the back and look down the aisles of merchandise and into the back room. The man then approached the cash register and, when he was eight or nine feet from Jones, displayed a gun and told Jones it was a holdup and to give him the money. Jones said the man was wearing a tan cap, flowered maroon-colored shirt, black pants and black loafers.

After leaving the store the robber ran down an alleyway near the store next to the home of Dorothy Rogers, who was sitting on her screened front porch; he dropped a tan hat as he ran. The police were called and witnesses, who did not testify at trial, gave a description of an older model black over dark blue Lincoln Continental with license plate number UG 1817 or 1870. Officers searched the area of the robbery and found a hat, print shirt and a pair of maroon pants several blocks from the store in the same alley down which the robber had run. Mrs. Rogers identified the shirt and pants as those worn by the man she had seen and Jones recognized the hat and shirt as those worn by the robber. In the lining of the pocket of the pants found on top of the print shirt, which had been identified by both witnesses, the police found the name "Allen" written in white lettering. Defendant, Lee Allen, his brother, and Karen

McQuowm were stopped at 12:10 p.m. that day about a mile from the shoe store in a black over blue Lincoln Continental which bore license number UG 1870; all were placed under arrest but Lee Allen and Karen McQuowm were not charged with the robbery. Defendant had $84 on his person when he was arrested; about $110, mostly singles, were taken in the robbery. At the police station defendant denied any involvement in the robbery but offered to "make a deal" with police by supplying information regarding a "junk dealer" or a "check passer." His offer was refused.

The record indicates that two groups of photographs, each containing a different picture of defendant, were shown to Jones that same day. At about 12:20 p.m. he viewed a photographic lineup containing an old picture of defendant. At 1:10 p.m. police showed him a new group of photos, including one taken of defendant just after his arrest that day. Defendant was the only person to appear in both groups of photos. Jones was not able to identify anyone from either group as the man who had robbed him. The State stipulated that any in-court identification of defendant by Jones would be suppressed unless the State could establish by clear and convincing evidence that the in-court identification had an origin independent of the photographic lineups shown to Jones on the day of the robbery. After in camera examinations of several witnesses the trial court found the State had shown that the in-court identification of defendant by Gregory Jones had a sufficient independent basis; Jones thereafter identified defendant as the robber in the presence of the jury.

Ernest Lyons, defendant's brother-in-law, testified that on the morning of the robbery defendant came to his house and asked to borrow Lyons' revolver to protect himself from a man named Buddie Moss to whom he owed money. Defendant was then wearing a black shirt with red trim, blue jeans and no hat. Defendant came back to the house 45 minutes later with his brother and a white girl, returned the gun to Lyons and shaved off his moustache and goatee. Defendant asked Lyons if he had any larger bills and showed him a thick wad of about 30 singles. Lyons admitted he was supported by girls who worked for him as prostitutes and he was impeached by a 1967 burglary conviction and a 1972 conviction for deceptive practice.

LaVerne Reckinger, the common-law husband of Karen McQuowm, testified that on the date of the robbery defendant's brother, Lee Allen, was living with Reckinger and Karen. At about 10:30 a.m. on the morning of the robbery defendant asked for a ride to his mother's house and Lee Allen, Karen and defendant left in Reckinger's mother's Lincoln Continental. Sometime after the defendant was released on bond, he came over to the house in which Reckinger and Karen lived. Reckinger testified he asked defendant whether he had used Reckinger's car and his

wife to rob the shoe store and that defendant had answered "the money was there to be got and I got it." Reckinger also stated defendant asked Karen if she was going to testify against him. Defendant visited Karen several more times to ask whether she was going to testify and told her he didn't want her to go to court. Reckinger testified that defendant told him the people at the store couldn't identify him because he had worn a disguise, consisting of an outer layer of clothes, a wig and a goatee, and that he had gone to Lyons' house after the robbery and shaved. Karen left town before defendant's trial and could not be called to testify. Reckinger's testimony was impeached by his previous convictions for burglary, theft and possession of drugs. A heroin addict, Reckinger testified that at the time of defendant's trial he was in jail awaiting trial for the theft of a carton of cigarettes and had been off drugs for three months; he also stated that no promises had been made to him by the State in return for his testimony.

■■ Defendant first contends that the trial court erred by allowing the store manager, Gregory Jones, to make an in-court identification of him, thereby denying him due process of law. He argues that the State did not meet the burden to which it had stipulated, failing to establish an independent basis for Jones' in-court identification of defendant by clear and convincing evidence. Defendant states in his brief that the State has conceded that the photographic identification process employed by the police was illegal and relies upon cases in which suggestive identification procedures were found by the court to have been used. (*E.g., United States v. Wade* (1967), 388 U.S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926; *People v. Lee* (1973), 54 Ill. 2d 111, 295 N.E.2d 449.) It is clear that in cases in which unnecessarily suggestive identification procedures are employed, an in-court identification of the defendant will be suppressed unless it can be shown by clear and convincing evidence that the witness had an independent basis for the in-court identification and that it was not tainted by any suggestive procedures employed by police. (*People v. Connolly* (1973), 55 Ill. 2d 421, 427, 303 N.E.2d 409, 412; *People v. Martin* (1970), 47 Ill. 2d 331, 338-39, 265 N.E.2d 685, 689, *cert. denied* (1971), 403 U.S. 921, 29 L. Ed. 2d 700, 91 S. Ct. 2240; *People v. Moore* (1977), 50 Ill. App. 3d 952, 958, 365 N.E.2d 1356, 1360-61.) Unlike the cases relied upon by defendant, however, Jones had not previously identified the defendant from either of the photographic lineups. He explained at trial that he could not do so because the lighting in the pictures shown to him was very poor and made the subjects look lighter-skinned than the robber. The State did not concede that the identification process was suggestive but merely stipulated that it would meet a particular burden of proof before the in-court identification would be allowed as it was required to do in any event. We find the State did meet that burden.

Jones testified that defendant was in the shoe store for two to three and a half minutes. There were no customers in the store and Jones watched defendant walk to the back of the store and return to the cash register. Jones testified the robber stood in front of the cash register for 45 seconds to a minute only a few feet from him. The lighting was excellent; there were several large, overhead fluorescent lights. The front of the store was a large glass window and it was a sunny day. Jones pointed out an overhead camera and talked to the robber as he observed him. While Jones did not recall seeing a moustache or goatee, he testified he distinctly remembered the robber's nose, cheekbones, eyes and eyebrows. His description of defendant's height was accurate (6'3") and he estimated defendant's weight at 200 pounds; according to jail records defendant in fact weighed 180 pounds. On a robber description form Jones completed before police arrived, he noted the robber's build as stocky. He also testified that he would describe defendant as stocky by the width of his shoulders. While some discrepancies did apparently exist between Jones' description of the robber and defendant's characteristics, these slight differences are not persuasive. (See, *e.g.*, *People v. Moore* (1977), 50 Ill. App. 3d 952, 956-57, 365 N.E.2d 1356, 1359-60.) Not only did Jones have an excellent opportunity to observe the robber in good lighting, but he was also able to relate details of the robber's appearance.

■■ Jones testified he was positive defendant was the man who robbed the shoe store on June 4. He stated he based his identification on his observation of the robber's nose, eyes, cheekbones and eyebrows. Although Jones had been a robbery victim eight times in 1975, he was certain of his identification of defendant. These indicators of Jones' ability to observe and make a correct identification are hardly outweighed by any possible effect of having seen two pictures of defendant in photographic lineups some seven months earlier. Jones, in fact, may have bolstered his own credibility by not identifying the robber in haste when he was twice shown the defendant's picture on the day of the robbery. We conclude that the trial court did not err in allowing the in-court identification of the defendant.

Defendant's second contention is that the trial court erred in admitting in evidence a pair of maroon pants with the name "Allen" written on the lining of the pocket. Defendant contends the word "Allen" was hearsay in that it was written by some unidentified person not present in court and, therefore, not available for cross-examination and that it was offered to prove that defendant was the owner of the pants, thereby connecting him to the robbery.

■■ The police officer who testified that he found the name "Allen" written in the pocket of the pants was merely reporting what he observed about those pants. The reference to the name "Allen" was made within a

description of the actions of police which led to defendant's arrest. They first obtained a description of the robber and the car and its occupants, then found pants identified by a witness as those worn by the robber which contained the name "Allen." Thereafter, when defendant was stopped in a car matching the description they had been given, they arrested him based on all the information they had concerning the robbery. In *People v. Thomas* (1975), 25 Ill. App. 3d 88, 92, 332 N.E.2d 597, 600, the court found it was not error to allow an investigator to testify to information given him upon which he acted to arrest the defendant where the person who supplied the information was not present in court. In the instant case the name was mentioned very briefly in trial and in closing argument; it was not given undue emphasis. In addition, defendant did not request an instruction limiting the purpose for which the name "Allen" could be admitted. See *Storm v. Brown* (1973), 15 Ill. App. 3d 29, 34, 303 N.E.2d 42, 45.

■■ Defendant next argues the trial court improperly allowed the prosecutor to bolster the testimony of Ernest Lyons by asking whether, when questioned by police on the afternoon of the robbery, Lyons had told the same story he told at trial and whether he had testified before the grand jury. Defendant did not object to the questions or Lyons' responses nor did he raise this question in his post-trial motion. While we recognize the general rule that the testimony of a witness may not be bolstered by showing he made statements out of court consistent with his testimony in trial (*People v. Clark* (1972), 52 Ill. 2d 374, 288 N.E.2d 363; *People v. Buckley* (1976), 43 Ill. App. 3d 53, 356 N.E.2d 1113), we do not find the admission of this testimony to have constituted plain error under Supreme Court Rule 615(a) (Ill. Rev. Stat. 1973, ch. 110A, par. 615(a)).

■■ Defendant next contends the prosecutor commented improperly regarding threats allegedly made by defendant to Karen McQuowm. The prosecutor argued as follows:

"[Defendant] threatened Karen and Karen is not here today. She is in a southern state. And we looked. We can bet we looked for her. She could not be found. Why didn't he want her to testify?"

In his rebuttal argument the prosecutor also stated that because defendant threatened Reckinger's common-law wife, Reckinger was willing to testify against him. Defendant did not object at trial to the argument of the prosecutor nor did he raise this issue in his motion for a new trial.

"The general rule followed by this court is that the failure by the defendant to raise an issue in the written motion for a new trial constitutes a waiver of that issue and it cannot be urged as a ground for reversal on review. [Citations.] This waiver rule applies to constitutional as well as to other issues. [Citations.]" (*People v. Pickett* (1973), 54 Ill. 2d 280, 282, 296 N.E.2d 856, 857.)

Defendant argues plain error was committed with regard to this argument. "[A] reviewing court's exercise of authority to notice plain error is discretionary and depends on (1) the closeness of the case, (2) the conduct of the trial judge, (3) the extent to which the error may have contributed to the verdict, and (4) the magnitude of the errors alleged. [Citation.]" (*People v. Olivas* (1976), 41 Ill. App. 3d 146, 153, 354 N.E.2d 424, 430.) We do not find the existence of plain error in this instance.

■■ Defendant next argues he was denied a fair trial when the prosecutor made the sign of the cross and prayed while the trial judge instructed the jury. The record indicates neither defense counsel nor the trial court observed this behavior and the jurors were not questioned as to whether they had seen it. The trial judge stated he did not believe the jurors saw the prosecutor's conduct because they were listening attentively to his instructions. The record does not suggest the jurors noticed what the prosecutor was doing. We believe the trial court's disposition of this matter was proper and that, while we find the prosecutor's conduct totally improper, no prejudice accrued to the defendant as a result of it.

Defendant finally argues the trial court considered evidence not contained in the record in imposing sentence: that defendant had intimidated a witness causing her to leave the court's jurisdiction. We believe this was a fair inference to be drawn from the evidence adduced at trial. LaVerne Reckinger testified that defendant visited Karen several times to ask whether she would testify against him and stated he didn't want her to do so. Her sudden departure as trial approached, coupled with the statements made to her by defendant, fairly suggest she was afraid to testify. The trial court did not err in considering this conduct on the part of defendant in imposing sentence.

For these reasons, the judgment of the Circuit Court of Kane County is affirmed.

Affirmed.

SEIDENFELD, P. J., and GUILD, J., concur.