*In re* HOLLIS MEMBERS, a Minor.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* HOLLIS MEMBERS, Respondent-Appellant.)

First District (4th Division)    No. 77-1113

Opinion filed July 12, 1979.

James J. Doherty, Public Defender, of Chicago (Dennis E. Urban and Frances Sowa, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Linda Dale Woloshin and Michael R. Sherwin, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LINN delivered the opinion of the court:

On November 12, 1975, a petition for adjudication of wardship was filed in the Juvenile Division of the circuit court of Cook County, alleging that the minor respondent, Hollis Members, was delinquent in that he had committed a robbery (Ill. Rev. Stat. 1975, ch. 38, par. 18—1). Respondent's motion to quash the arrest and to suppress the identification evidence was denied. In February 1976, following adjudicatory and dispositional hearings, respondent was found delinquent, adjudged a ward of the court and placed on probation for one year.

On February 14, 1976, the State petitioned for supplemental relief, alleging that respondent had violated his probation by committing the offense of attempt robbery (Ill. Rev. Stat. 1975, ch. 38, pars. 8—4, 18—1). At the conclusion of a hearing on the petition, the trial court found that respondent had violated his probation and committed him to the Department of Corrections.

Respondent appeals and first challenges the trial court's adjudication of delinquency, contending: (1) the trial court erred in denying his motion to quash the arrest and to suppress the identification evidence; (2) the trial court's order denying the motion to quash and suppress is devoid of findings of fact and conclusions of law in violation of section 114—12(e) of the Illinois Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, par. 114—12(e)); (3) the State failed to prove he committed the robbery offense prior to his 17th birthday; and (4) the trial court acted arbitrarily in refusing to allow three defense witnesses to tesify on the basis that they had violated an exclusion order.

Respondent also challenges the trial court's finding that he violated his probation, contending: (1) that if the adjudication of delinquency is reversed, the probation violation finding cannot stand; (2) the trial court erred in admitting hearsay testimony at the probation violation hearing; and (3) the State failed to prove he violated his probation.

We affirm the trial court.

### Motion to Suppress Hearing

In connection with the State's delinquency petition, respondent filed a motion to quash the arrest and to suppress the identification evidence. At the suppression hearing, the complainant, Debra Smith, testified that on November 8, 1975, at approximately 9:45 p.m., she and her girlfriend, Kathy Carey, were walking along Parkside Street near Chicago Avenue when two boys ran up behind them. One of the boys grabbed the complainant around the neck, "held something" against her back, and said: "Hand the purse back." After the complainant failed to comply, the boy released his neckhold and jerked the purse from her grasp. As the boy

began to back away, the complainant turned and looked him in the face. The two boys then fled.

The complainant immediately ran home, told her mother what had happened, and complainant's mother called the police. Shortly thereafter, a police officer arrived at the home and elicited a general description of the two offenders from the complainant. The boy who stole complainant's purse was described as 5 feet 7 inches tall and 15 to 16 years old. His male companion was 5 feet 1 inch tall and 11 years old.

Later that same night, complainant saw these same two boys "[w]here one of the boys lives." She went straight to the police station and gave the police this information.

Respondent testified that on November 12, 1975, at approximately 6 p.m., he was "walking the streets" with Earl Bidell and two other friends. As they approached the intersection of Chicago Avenue and Walton Street, an unmarked police car pulled up to the curb. Two police officers emerged from the car and walked toward the three boys. One of the officers asked respondent his name. Respondent answered: "Joe Members." When the officer asked if there was a Hollis Members in the group, respondent stated "yea, that's me."

The police officers grabbed respondent and another boy, named Earl Bidell, and told them to get in the car. When respondent asked why, one of the officers replied: "For armed robbery."

The police officers drove respondent and Earl Bidell to the complainant's house. While the two boys waited in the car with one of the police officers, the second officer entered the complainant's house and returned a few seconds later. The two boys were then transported to the police station. A short time thereafter, both the complainant and her girlfriend, Kathy Carey, arrived at the station and identified respondent as the robber.

Police Officer Thomas Butterfield testified that at 4 p.m. roll call on November 12, 1975, he and his partner were informed by Investigator Jones that the respondent, Hollis Members, was named as an offender in a purse snatching. At about 6:45 p.m. that same night, Officer Butterfield and his partner were driving in the vicinity of Chicago Avenue and Walton Street when they spotted a group of boys walking down the street. The police officers parked their unmarked car and approached the boys.

Officer Butterfield asked if one of the boys in the group was named Hollis Members. The respondent replied that it was his name. The police officers also ascertained that one of the other boys in the group was named Earl Bidell and was respondent's close friend. The two youths were placed in the unmarked police car where they were informed of

their *Miranda* rights and told that they were under investigation for a purse snatching.

The police officers then drove to the complainant's home where one of the officers informed the complainant that they had "the juveniles named" in the car. When asked if the complainant or anyone in her family walked out to the car, Officer Butterfield stated: "No, sir * * *. No, I went into the home." The police officers then transported the two boys to the station. Shortly thereafter, the complainant and Kathy Carey separately identified respondent from a lineup as the purse snatcher.

On cross-examination, Officer Butterfield testified that when he asked the respondent and Earl Bidell to get into the unmarked police car he grabbed them both by the arm. The officer was questioned further on this point:

> "Would you have let him [the respondent] walk away from you at that time?
>
> * * *
>
> The Witness: No, I don't believe I would have."

At the close of all the evidence, the trial court denied respondent's motion to quash the arrest and to suppress the identification evidence. A hearing was then held on the delinquency petition.

### Delinquency Petition Hearing

At the delinquency petition hearing, the complainant corroborated the testimony she gave at the earlier motion to suppress hearing. However, several additional facts were also disclosed. After the respondent had come up from behind and ripped the purse from complainant's grasp, the complainant turned, looked respondent in the face, and said: "Check [the purse] for money or whatever you want, but can I have the purse back and my I.D.'s." Respondent fled with the purse.

Complainant testified that she looked at respondent's face for approximately 20 seconds. While it was late at night, light was furnished by street lamps and a nearby gas station. She testified that at the time of the incident, respondent had a 3-inch "afro" and was wearing high shoes, maroon pants, and a white shirt with a diamond-shaped design on the back. Complainant identified respondent in court as the purse snatcher. She also stated that she had never seen respondent prior to the purse snatching incident.

Shortly following the robbery, the complainant's family and some friends began driving around the neighborhood searching for complainant's purse. At one point during the search, they chased two boys, who matched the description of the offenders, into a home owned by respondent's family. They knew it belonged to the Members family

because the complainant's sister knew Jimmy Members, the respondent's younger brother, from school.

As the complainant sat in a car across from the Members' house, she saw the respondent and a male companion standing on the porch. She identified them as the two boys who had been involved in the robbery. The complainant and her parents then drove to the station and gave this information to the police.

The State called Kathy Carey as its next witness. Carey's testimony substantially corroborated the complainant's description of the purse-snatching incident. When respondent grabbed the complainant from behind and took her purse, Carey got a "good look" at him for about one minute. She described respondent as having a short "natural" and wearing red pants with a bright colored shirt that had a patch design on the back. Carey identified respondent in court as the purse snatcher.

On cross-examination, Carey testified that she had never seen respondent before the robbery. Carey also disclosed that she had identified respondent from a lineup at the police station following his arrest. The State then rested its case-in-chief.

When the trial court denied respondent's motion for a directed finding, defense counsel requested permission to call the complainant's mother as an adverse witness. The request was denied on the basis that the complainant's mother had remained in the courtroom during earlier proceedings, in violation of the court's exclusion order. The trial court specifically noted that it was defense counsel who had requested the order excluding witnesses from the courtroom and that the State had joined in the motion to exclude witnesses.

Defense counsel then made the following offer of proof:

"[W]hen the State put on its case the complaining witness stated that she never knew Hollis Members before this incident. And I'm sure with the mother being called to the stand, I wish to show that they were neighbors, and that they knew each other. And that the complaining witness is * * * lying about that one fact."

After concluding the offer of proof, defense counsel attempted to call respondent's mother and father to the stand. However, the trial court ruled that neither of them could testify since they had also violated the exclusion order.

The defense then called the complainant as an adverse witness. The complainant testified that she had lived at 5723 West Erie from the time she was three months old. During March and June of 1975, the respondent's family lived at 5718 West Ohio Street, across and down the alley from her home. She stated that she did not know respondent prior to the robbery.

Respondent testified that he had known the complainant prior to the

date of the purse snatching incident. Respondent also testified that on November 8, 1975, at approximately 9:45 p.m., he saw the complainant and Kathy Carey as he and a group of friends were passing out advertisement cards for a "beauty shop, hair clinic." He denied taking the complainant's purse.

At the close of all the evidence, the respondent was found delinquent and adjudged a ward of the court. The trial court denied defense counsel's motion for a new trial. Following a dispositional hearing, respondent was placed on probation for one year.

## Probation Revocation Hearing

On February 14, 1976, the State filed a petition for supplemental relief, alleging that respondent had violated his probation by committing the offense of attempt robbery. At the probation revocation hearing, Patricia Roeckl testified that on February 13, 1976, at approximately 10 a.m., she had finished her grocery shopping at a Jewel food store located at the intersection of Chicago Avenue and Pine Street. Shortly after she left the store and began walking home west on Chicago Avenue, Ms. Roeckl spotted three boys across the street. She immediately turned off Chicago Avenue and began walking north on Parkside Street.

"Q. Okay. And after you turned on Parkside, where did you go?

A. Well, I looked back and I see these three boys following me. I couldn't make it home, so I turned to the first house there.

Q. Did you know who lived in that house, Ms. Roeckl?

A. Yes * * *. They are my neighbors."

As Ms. Roeckl began pulling her grocery cart up the neighbor's stairs, the three boys converged upon her. One of the boys announced: "This is a stick-up." Ms. Roeckl identified respondent in court as that boy. After the three boys searched Ms. Roeckl's pockets the respondent stated: "I will kill you, you mother fucker." Ms. Roeckl screamed, and a neighbor came out of the house with a tire wrench and chased the boys away. The police arrived on the scene immediately thereafter, picked up Ms. Roeckl, and began patroling the neighborhood in search of the three boys. The police located the offenders about a block from the confrontation with Ms. Roeckl. Upon sighting the squad car, the three boys fled and a chase ensued. Respondent was caught in a nearby alley and placed under arrest. Ms. Roeckl identified respondent as one of the boys involved in the incident. Ms. Roeckl later identified respondent at the police station. She also identified him in court.

The State called as its next witness Officer James A. Smith. Officer Smith corroborated Ms. Roeckl's testimony concerning the occurrence and the subsequent apprehension of respondent.

Following Officer Smith's testimony, the State rested its case.

Defense counsel presented a motion for a directed finding. The motion was denied. The defense then rested. At the close of all the evidence, the trial court found that respondent had violated his probation and committed him to the Department of Corrections.

Respondent appeals from: (1) the adjudication of delinquency; and (2) the subsequent finding that he had violated his probation.

OPINION

I

Respondent initially contends he was arrested without probable cause. We disagree.

The police placed respondent under arrest near the intersection of Chicago Avenue and Walton Street the night of November 12, 1975. The constitutional validity of this arrest focuses upon whether the police officers had probable cause to believe respondent had committed an offense. *Henry v. United States* (1959), 361 U.S. 98, 4 L. Ed. 2d 134, 80 S. Ct. 168; Ill. Rev. Stat. 1975, ch. 38, par. 107—2(c); *People v. Wright* (1974), 56 Ill. 2d 523, 309 N.E.2d 537.

The information upon which an arrest is based need not be sufficient to support a conviction. (*Draper v. United States* (1959), 358 U.S. 307, 3 L. Ed. 2d 327, 79 S. Ct. 329.) All that is necessary is that there be a " 'reasonable ground for belief of guilt.' [Citations.]" (*Brinegar v. United States* (1949), 338 U.S. 160, 175, 93 L. Ed. 1879, 1890, 69 S. Ct. 1302, 1310.) "The test is essentially one of reasonableness." *People v. Payne* (1972), 6 Ill. App. 3d 378, 380, 286 N.E.2d 35, 36.

As our supreme court recently stated in *People v. Blitz* (1977), 68 Ill. 2d 287, 292-93, 369 N.E.2d 1238, 1240-41, quoting from *United States v. Davis* (D.C. Cir. 1972), 458 F.2d 819, 821:

" 'Probable cause does not emanate from an antiseptic courtroom, a sterile library or a sacrosanct adytum, nor is it a pristine "philosophical concept existing in a vacuum," *Bell v. United States*, 102 U.S. App. D.C. 383, 386, 254 F.2d 82, 85 (1958), but rather it requires a pragmatic analysis of "everyday life on which reasonable and prudent men, not legal technicians, act." *Brinegar v. United States*, 338 U.S. 160, 175, 69 S. Ct. 1302, 1310, 93 L. Ed. 1879 (1949). * * *' "

At the start of their shift on November 12, 1975, the two arresting police officers were informed by Inspector Jones that Hollis Members was named as an offender in a purse snatching. Respondent contends that since no source was provided at the suppression hearing for the name Hollis Members, "the police were obviously acting on a hunch or mere suspicion."

■■ The evidence introduced at trial, however, clearly disclosed that the

complainant and her family furnished the police with respondent's name. Although this information was not presented at the suppression hearing, it may properly be considered by us in reviewing respondent's contention that the trial court erred in finding probable cause to arrest did exist. *People v. Braden* (1966), 34 Ill. 2d 516, 216 N.E.2d 808; *People v. Glanton* (1975), 33 Ill. App. 3d 124, 338 N.E.2d 30.

■■ Furthermore, the information supplied by the complainant, who was the victim of the crime, afforded the police reasonable grounds for believing an offense had been committed and that respondent probably committed that offense. (See *People v. Martin* (1977), 46 Ill. App. 3d 943, 361 N.E.2d 595; *People v. Kahl* (1978), 63 Ill. App. 3d 703, 380 N.E.2d 487.) Since we conclude that respondent's arrest was based upon probable cause, we also find that the trial court properly denied respondent's motion to suppress the identification testimony.

## II

Section 114—12 of the Illinois Criminal Code provides in relevant part:

> "(e) The order * * * granting or denying the motion [to suppress] shall state the findings of fact and conclusions of law upon which the order * * * is based." (Ill. Rev. Stat. 1975, ch. 38, par. 114—12(e).)

Respondent contends the trial court's order, denying his motion to suppress the identification testimony, is devoid of findings of fact and conclusions of law and thereby violates section 114—12. We disagree.

■ Section 114—12 is entitled "Motion To Suppress Evidence Illegally Seized." The Committee Comments explain that section 114—12 is designed to provide a "pre-trial procedure for enforcing the constitutional protection against illegal searches and seizures * * *." (Ill. Ann. Stat., ch. 38, par. 114—12, Committee Comments, at 273 (Smith-Hurd 1970).) In light of this fact, we held in *People v. Holmes* (1972), 6 Ill. App. 3d 254, 285 N.E.2d 561, when faced with a similar contention, that section 114—12 was not intended to and did not apply to a motion which sought to suppress identification testimony only.

Additionally, the evidence in this case supports the trial court's denial of respondent's motion to suppress. Thus, even if findings of fact and conclusions of law were required under section 114—12, their absence would not warrant reversal of the trial court's ruling. *People v. Drury* (1971), 130 Ill. App. 2d 798, 268 N.E.2d 460.

## III

Respondent next contends the trial court's adjudication of delinquency cannot stand because the State failed to prove he committed the

584

robbery offense prior to his 17th birthday. Respondent argues that age is an element of delinquency which must be proved beyond a reasonable doubt. We disagree.

The Illinois Supreme Court recently considered the nature and effect of the age factor in the definition of delinquent minors under the Juvenile Court Act (Ill. Rev. Stat. 1975, ch. 37, par. 702—2). The supreme court held:

> "* * * [A]ge is not an element which must be proved beyond a reasonable doubt in order to support an adjudication of delinquency. * * * Age * * * is merely the factor which authorizes the application of the juvenile system. Once the State has properly alleged in the petition for adjudication of wardship that the respondent was under 17 years of age at the time of the commission of the offense which forms the basis for the petition (Ill. Rev. Stat. 1977, ch. 37, pars. 702—1, 702—2, 704—1), the authority of the court to proceed under the Juvenile Court Act has been asserted. Unless the respondent specifically challenges the authority of the court to proceed against him as a juvenile, the respondent is deemed to have consented to the juvenile proceedings and has waived any objections to the court's authority * * * to impose juvenile sanctions upon him." *In re Greene* (1979), 76 Ill. 2d 204, 212, 390 N.E.2d 884, 887.

The delinquency petition in this case alleged that respondent was under 17 years of age at the time of the robbery offense which formed the basis for the petition. By failing to challenge this allegation, or the trial court's authority to proceed against him as a juvenile, the respondent "is deemed to have consented to the juvenile proceedings."

### IV

Respondent next contends the trial court committed prejudicial error when it refused to allow three defense witnesses to testify, at the delinquency petition hearing, because they had violated an exclusion order. We disagree.

It lies within the sound discretion of the trial court whether to permit a witness to testify who has violated an exclusion order. The trial court's exercise of its discretion will not be disturbed on review unless the party offering the witness has been deprived of material testimony without his fault. *People v. Bridgeforth* (1972), 51 Ill. 2d 52, 281 N.E.2d 617.

After the State rested its case-in-chief, defense counsel requested permission to call the complainant's mother as an adverse witness under section 60 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 60). The trial court denied this request since the complainant's mother had remained in the courtroom during earlier proceedings in violation of the

court's exclusion order. Defense counsel then attempted to call respondent's mother and father to the stand. However, the trial court would not permit them to testify because they too had violated the exclusion order.

Respondent's avowed purpose for calling these three witnesses to the stand was to impeach the complainant's earlier testimony "that she never knew Hollis Members before the purse snatching incident." The initial problem we confront is whether this was in fact the complainant's earlier testimony. The colloquy on this point appears as follows:

"Q. Debbie, do you know Hollis Members?

\* \* \*

A. Do I know him?

Q. Do you have any knowledge of him, did you ever receive any knowledge about him in the past.

A. Not really."

In view of the inherent ambiguity attributable to both the question and the answer, it is seriously debatable whether the proffered testimony by the complainant's mother and Mr. and Mrs. Members—that the complainant did know Hollis Members prior to the robbery—would have in fact been impeaching.

■■ Further, even if we were to assume that the trial court erred in not allowing the above three witnesses to testify for this limited impeachment purpose, this error would be harmless, rather than prejudicial, and would not warrant reversal of the delinquency finding. (See *People v. Bridgeforth* (1972), 51 Ill. 2d 52, 281 N.E.2d 617.) The testimony of Kathy Carey, who positively identified the respondent both out-of-court and in-court as the purse snatcher, would be more than sufficient to support the trial court's adjudication of delinquency.

V

Respondent contends that if the adjudication of delinquency is reversed the trial court's probation violation finding cannot stand. Since we have concluded that the trial court properly found respondent to be delinquent, this contention must necessarily fail.

VI

■ Respondent next contends the trial court erred, at the probation violation hearing, when it allowed Officer Smith to testify, over a hearsay objection, that Ms. Roeckl identified respondent at the police station following his arrest. We disagree. Earlier in the same hearing, Ms. Roeckl had testified on direct examination concerning her out-of-court identification of respondent. Her testimony on this point was then subject to cross-examination. In light of this fact, Officer Smith's testimony, concerning the same identification, was not subject to the traditional

hearsay dangers and was, therefore, properly admitted. *People v. Saffold* (1977), 47 Ill. App. 3d 934, 365 N.E.2d 524; *People v. Morano* (1979), 69 Ill. App. 3d 580, 387 N.E.2d 816.

## VII

Finally, respondent contends the State failed to prove he violated his probation. Considering Ms. Roeckl's positive out-of-court and in-court identifications of respondent, as one of the boys who attempted to rob her, we find this contention to be without merit. See *People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313.

Accordingly, for the reasons stated, we affirm the trial court.

Affirmed.

JOHNSON and ROMITI, JJ., concur.