THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
WILLIAM LANGDON (Impleaded), Defendant-Appellant.

First District (5th Division)    No. 79-1260

Opinion filed December 19, 1980.

Ralph Ruebner and Susan Bandes, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Joel A. Stein, and Ann L. Benedek, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

After a jury trial, defendant was convicted of armed robbery and received a sentence of 5 to 15 years. On appeal, he contends that (1) the trial court's refusal at a pretrial hearing to permit introduction of evidence concerning the alleged illegality of defendant's arrest was an abuse of discretion; (2) testimony as to the contents of an anonymous telephone call was inadmissible hearsay; (3) the prosecutor should not have been permitted to testify as a rebuttal witness while continuing to prosecute the case; (4) cross-examination of a prosecution witness was arbitrarily restricted on a crucial issue; and (5) the State made improper remarks in closing argument.

It appears that two persons committed an armed robbery of Sherrod Pierce's tavern on June 1, 1974, and that subsequently defendant and Jeffrey Truss were charged with the crime. At the commencement of defendant's trial, he moved *in limine* to suppress testimony concerning a lineup and the subsequent in-court identifications of witnesses at the lineup. A later amendment to the motion asserted that defendant's arrest was warrantless and without probable cause. After defendant testified to his warrantless arrest, defense counsel was precluded from asking any questions concerning the arrest on the basis that in both his motion and the amendment thereto he asked the court only "to suppress any testimony of the lineup identification and to bar and suppress any identification in court." In view thereof, the court refused any offer of proof by defense counsel concerning the arrest.

Sherrod Pierce then testified that he received a telephone call from a police officer to view a lineup; that he was told by the officer that "they had two suspects that would be in the lineup"; that he did not speak to any officers at the station before viewing the lineup of seven or eight persons but, afterwards, did tell the police he recognized two of them as the offenders; and that, from a photograph of the lineup, he later pointed out defendant and Jeffrey Truss as those persons. John Coleman testified that he was called by Pierce to view the lineup but had no discussion with Pierce or anyone else about the lineup before he viewed it. He identified

defendant and Truss as the offenders. Police officer Gallagher, who conducted the lineup, testified that he did not tell anyone that there would be two suspects in it. The motion to suppress was then denied.

At the trial, Sherrod Pierce testified that shortly before closing time on the night in question, defendant and another man entered his tavern; that defendant walked over to the wall telephone and appeared to use it briefly; that he then put a gun to Pierce's head and announced a "stickup"; that defendant told his partner Jeffrey Truss to go behind the bar and get the money, whereupon Truss jumped over the bar and emptied $187 from the cash register and Pierce gave defendant the $33 in his pockets; that Pierce described the offenders to police, noting in particular that defendant wore a beard; that, as he was relating the incident to the police, he answered a telephone call from an unidentified woman; and that he handed the telephone to an officer whom he then saw write down some numbers. Pierce testified also that Ricky Hayes (the bartender), Thomas Hayes, and John Coleman were in the tavern that evening.

During cross-examination of Pierce, the trial court refused a defense request to bring Willie Sims into court to be viewed by Pierce, purportedly to determine whether or not Sims was in the tavern at the time of the offense. Pierce testified specifically, however, that Sims had not been in the tavern.

Richard Hayes testified that he was bartending at Pierce's tavern when two men entered and pretended to use the telephone; that they walked to the counter, and defendant put a gun to Pierce's head and announced a "stickup"; that defendant told Truss to take money from the cash register—which he did. He testified also that he knew Sims and, when asked whether he was in the tavern that night, Hayes said, 'I am not sure but I don't think he was."

John Coleman testified that he was present at Pierce's lounge when two men walked in and picked up the telephone as if to make a call; that they walked outside briefly and, upon returning, defendant pulled out a revolver which he pointed at Pierce's face and announced a robbery; and that he told Truss to get the money from the cash register.

Police investigator George Basile testified that after arriving with his partner at the tavern to investigate the incident, a police officer at the scene gave him a piece of paper on which was written the number of an Illinois license plate which the other officer had received over the telephone; that he and his partner then proceeded to an address where he saw an automobile in the driveway bearing that license number; that he went to the house at that address and was invited in by Truss; that Truss told Basile he and defendant had used his father's car that night and had been in the neighborhood of Pierce's tavern; that Basile also talked to defendant, who admitted that he had been with Truss but said they had

not been in that area, and that both were placed under arrest and taken to a police station.

Jeffrey Truss testified that he and defendant left the Truss home on the night in question and went to a liquor store and then to a tavern—following which they went to a second tavern where they stayed until closing and then returned home; and that he had never been in the tavern owned by Pierce.

Defendant testified substantially as did Truss; but, in addition, stated that while he told investigator Basile he had been in the area of the robbery at approximately the time it occurred, Basile did not ask whether he knew anything about a tavern holdup.

Willie Sims, called by the defense, testified that he was in Pierce's tavern at the time in question; that the offenders were there when he arrived; that he saw them leave and return in about five minutes; that one of them "put the gun on Sherrod"; that he could not remember having consumed alcohol before arriving at the bar but drank two bottles of beer while he was there; that neither defendant nor Truss was one of the offenders; that he was not asked by the police for information concerning either offender and described them for the first time at trial; and that he could not recall telling the prosecutor that he did not remember what had happened that night.

As the sole witness in rebuttal, assistant State's Attorney Irwin Solganick (one of the two prosecutors in the instant case) testified over objection that he had spoken to Sims in the courtroom during the trial and that Sims had told him and the co-prosecutor that "he [Sims] had no recollection of the events that actually happened in the robbery" and "that he couldn't identify anybody." He also stated that Sims was intoxicated when he spoke with him. The trial court then overruled an objection to Solganick giving any closing argument, but it directed him not to make any argument concerning any of the facts to which he had testified. In closing argument, the other prosecutor referred to Solganick's testimony and also said, "Willie Sims will tell you the sun is blue if you give him a drink."

OPINION

Defendant initially contends that the trial court abused its discretion by refusing to hear testimony concerning the alleged illegality of the arrest at the pretrial hearing. He maintains that while the original motion pertained to the suppression of identification evidence, it was amended to allege lack of probable cause, and therefore, because the issue was raised, the court unfairly precluded questioning concerning the arrest. The State argues, however, that any error was cured at trial, as additional evidence was presented to establish probable cause. Thus, in order to assess the

merits of defendant's argument, it is necessary to determine from the entire record whether sufficient evidence in support of probable cause was adduced so as to free the pretrial proceedings from possible error.

■■ It is well established that testimony received at trial may be considered by a reviewing court to determine the propriety of an adverse pretrial ruling on a motion alleging lack of probable cause, and may thereby cure the purported error of the trial court in denying the pretrial motion. (*People v. Braden* (1966), 34 Ill. 2d 516, 216 N.E.2d 808; *In re Members* (1979), 74 Ill. App. 3d 575, 393 N.E.2d 521.) The rationale for that rule permits the accused, as a matter of convenience, to move in a pretrial hearing for suppression of evidence illegally seized, and allows the trial court's ruling on such motion to be modified or reversed at any time prior to final judgment. *Braden; People v. Wade* (1979), 71 Ill. App. 3d 1013, 389 N.E.2d 1230.

In order to determine, as here, that probable cause exists, it is necessary to consider the totality of the facts and circumstances known to the officers at the time of the arrest. (*People v. Creach* (1980), 79 Ill. 2d 96, 402 N.E.2d 228; *People v. Robinson* (1976), 62 Ill. 2d 273, 342 N.E.2d 356.) To resolve the question of probable cause in a specific instance, the courts must of necessity weigh probabilities based upon the factual and practical situations that confront reasonable people in everyday life. (*People v. Clay* (1973), 55 Ill. 2d 501, 304 N.E.2d 280.) Within that context, probable cause requires that "a reasonable and prudent person in possession of the knowledge which has come to the arresting officer would believe that the person to be arrested had committed a crime." (*People v. Sakalas* (1980), 85 Ill. App. 3d 59, 63, 405 N.E.2d 1121; *People v. Vogel* (1978), 58 Ill. App. 3d 910, 374 N.E.2d 1152.) To aid in that determination, hearsay evidence may be considered (*Sakalas; People v. Brooks* (1973), 13 Ill. App. 3d 1003, 301 N.E.2d 496), and a reviewing court will not intervene unless the finding of the trial court is manifestly erroneous (*People v. Conner* (1979), 78 Ill. 2d 525, 401 N.E.2d 513).

■■ Our review of the record before us indicates that investigator Basile went to the Truss home because of the license number he had received from the anonymous caller and, in so doing, he did not, as the arresting officer, improperly consider the contents of hearsay information in making the probable cause determination. Moreover, Jeffrey Truss told Basile that he had used his father's car that night and that he was accompanied by defendant, who told Basile they had been in the neighborhood of Pierce's tavern at approximately the time of the offense. Basile also observed that defendant and Truss matched the general description of the perpetrators given by the occurrence witnesses. Although defendant denied being involved in the robbery, we find that fact does not significantly erode the probability that the arresting officer,

possessed as he was of the information that had come to him, was warranted in concluding that probable cause existed to make the arrest. In view of the entire record, therefore, we hold that while it may have been preferable to conduct a pretrial hearing on the question of probable cause (see *Wade*), the trial court did not err in refusing to consider that question at such hearing.

Defendant's second contention is that hearsay testimony of the contents of an anonymous telephone call was substantively relied upon to prove defendant's guilt. Defendant asserts that Sherrod Pierce and investigator Basile were permitted to testify as to the contents of the conversation and that the State made reference to them in closing argument.

Hearsay is evidence of an out-of-court statement relied upon to prove the truth of the matter asserted and thus is inadmissible, because it affords no opportunity for the party against whom it is offered to test the credibility of the absent declarant. (*People v. Parrott* (1976), 40 Ill. App. 3d 328, 352 N.E.2d 299.) The admission of hearsay identification testimony could be reversible error if it substitutes for courtroom identification or bolsters a weak identification (*People v. Coleman* (1974), 17 Ill. App. 3d 421, 308 N.E.2d 364) or if it effectively denies the accused the right of confrontation (*People v. Bolden* (1978), 59 Ill. App. 3d 441, 375 N.E.2d 898; also see *People v. Turner* (1968), 91 Ill. App. 2d 436, 235 N.E.2d 317).

■■ In our judgment, testimony of the anonymous telephone call was properly admitted, as it was offered only to prove that a communication had in fact been made and thereby strengthened the finding of probable cause. (See *People v. Williams* (1978), 62 Ill. App. 3d 966, 379 N.E.2d 1268; *cf. In re Guttierrez* (1979), 71 Ill. App. 3d 537, 390 N.E.2d 25.) Both the testimony of Pierce that the police officer "jotted down numbers" and the State's point in closing argument that Pierce "saw the police officer jot down some numbers" were not objectionable since they were merely reports of what Pierce had actually observed. (See *People v. Allen* (1978), 60 Ill. App. 3d 445, 376 N.E.2d 1042.) Moreover, the testimony of Basile that he "wrote an Illinois license plate number" was properly admitted for the limited purpose of showing that he relied upon the information in following a particular course of conduct in the investigation, resulting in the arrest. (See *People v. Daliege* (1976), 40 Ill. App. 3d 706, 352 N.E.2d 247; *People v. Thomas* (1975), 25 Ill. App. 3d 88, 322 N.E.2d 597.) Finally, in attempting to refute defendant's testimony in closing argument, the State referred to the telephone call and license number but made no other factual assertions that had not been testified to by Pierce and Basile, nor did the State elaborate on that evidence in a manner designed to prove defendant's guilt. We believe, therefore, that the testimony of the

telephone conversation did not constitute inadmissible hearsay, as it carried no assertion that defendant was the perpetrator of the offense (*cf. Bolden*), and the trial court did not err in allowing it.

Defendant next contends that the trial court abused its discretion by permitting the prosecutor to testify in rebuttal while continuing to prosecute the case. The State maintains that the trial court exercised proper discretion, as the prosecutor's testimony was necessary after defendant introduced the testimony of Willie Sims.

Although the practice is not encouraged, the traditional rule in Illinois is that a prosecuting attorney is permitted to testify in a criminal case in which he is engaged if, in the discretion of the trial court, such testimony is determined to be necessary (*People v. Cannon* (1975), 25 Ill. App. 3d 737, 323 N.E.2d 846; also see *People v. Schraeberg* (1932), 347 Ill. 392, 179 N.E. 829; *People v. Nelson* (1967), 89 Ill. App. 2d 84, 233 N.E.2d 64), and a court of review will not overturn that determination absent abuse of discretion (*Cannon*). The justified reluctance of courts to permit the prosecutor to become a witness in the case reflects the belief that the jury will accord far greater weight to his testimony than to that of an ordinary witness, by virtue of the prosecutor's personal prestige and official status (*People v. Gendron* (1968), 41 Ill. 2d 351, 243 N.E.2d 208, *cert. denied* (1969), 396 U.S. 889, 24 L. Ed. 2d 164, 90 S. Ct. 179; *Robinson v. United States* (8th Cir. 1928), 32 F.2d 505; also see *People v. Bitakis* (1972), 8 Ill. App. 3d 103, 289 N.E.2d 256); nevertheless, it has been held that the employment of an attorney in the case as a witness only affects the credibility of his testimony. *People v. Gerold* (1914), 265 Ill. 448, 107 N.E. 165.

In the case before us, it appears that the trial court acted within its discretion in finding that the testimony of the prosecutor was material and necessary. Willie Sims had testified that neither defendant nor Jeffrey Truss was one of the offenders; that he had said nothing to the police about the incident; and that he was unable to recall telling Solganick that he had no recollection of the events. In view of those facts and of the trial court's warning that Solganick's testimony was not to be referred to in closing argument, his rebuttal testimony was properly admitted as impeachment. We note, however, an American Bar Association standard which states:

> "Unless a prosecutor is prepared to forego impeachment of a witness by the prosecutor's own testimony as to what the witness stated in an interview or to seek leave to withdraw from the case in order to present the impeaching testimony, a prosecutor should avoid interviewing a prospective witness except in the presence of a third person." (1 ABA Standards for Criminal Justice §3—3.1(f) (1980).)

It appears to be implicit therein that Solganick should have withdrawn from the case in order to present this testimony; however, defendant has failed to demonstrate with reference to the record that he was prejudiced by Solganick's participation in the closing arguments, and we thus find that no prejudicial error resulted.

Defendant further posits that the trial court improperly limited the scope of defense counsel's cross-examination of Sherrod Pierce by refusing to permit Willie Sims to be brought into the courtroom to be viewed by Pierce, in the expectation that he might then recall that Sims was in the tavern that evening.

The latitude allowed in the cross-examination of witnesses generally rests within the discretion of the trial court (*Alford v. United States* (1931), 282 U.S. 687, 75 L. Ed. 624, 51 S. Ct. 218), and a court of review will intervene only when there is abuse of discretion resulting in manifest prejudice to defendant (*People v. Nugara* (1968), 39 Ill. 2d 482, 236 N.E.2d 693, *cert. denied* (1968), 393 U.S. 295, 21 L. Ed. 2d 261, 89 S. Ct. 257; *People v. Jones* (1975), 34 Ill. App. 3d 103, 339 N.E.2d 485, *cert. denied* (1976), 426 U.S. 953, 49 L. Ed. 2d 1192, 96 S. Ct. 3179). With respect to identification witnesses, the scope of cross-examination is somewhat broader and encompasses any question which may explain, modify or discredit the testimony elicited in direct examination. (*People v. Lewis* (1974), 18 Ill. App. 3d 281, 309 N.E.2d 784.) Moreover, in cases in which the right to cross-examination was held to have been unduly restricted, it was found that the trial court prevented defendant from questioning the witness on the identification (*Lewis*), or serious doubt was cast on the testimony of eyewitnesses, but the testimony was not tested by cross-examination. *People v. Watkins* (1974), 23 Ill. App. 3d 1054, 320 N.E.2d 59.

In the present case, it appears that Pierce knew Sims; that defendant did question him concerning the presence of Sims in the tavern; and that he denied Sims was there. It is apparent that at no time was doubt cast on his testimony and, in view of his positive statements concerning Sims and the fact that there was sufficient opportunity to discredit Pierce through cross-examination and in the direct examination of Sims, the trial court's refusal to permit Sims to be brought into the courtroom was not error. See *People v. Adams* (1967), 36 Ill. 2d 492, 224 N.E.2d 252.

Defendant finally contends that the State's remark in closing argument, that "Willie Sims will tell you the sun is blue if you give him a drink," was unsupported by the evidence and unfairly prejudicial.

The character and scope of closing argument is ordinarily left to the discretion of the trial court, as it is presumed that the prejudicial effect of a remark during argument is gauged better from the circumstances observed at trial than from what is gleaned from the record on appeal

and, unless there is clearly abuse of discretion, the ruling of the trial court will not be disturbed. (*People v. Smothers* (1973), 55 Ill. 2d 172, 302 N.E.2d 324.) To determine if there is prejudice, a reviewing court must consider the content of the statements made, its relation to the evidence, and the impact on the right of the accused to receive a fair trial. (*People v. Franklin* (1976), 42 Ill. App. 3d 408, 355 N.E.2d 634.) Unless the improper remark substantially prejudices the accused, it does not constitute reversible error (*People v. Baptist* (1979), 76 Ill. 2d 19, 389 N.E.2d 1200; *People v. Nilsson* (1970), 44 Ill. 2d 244, 255 N.E.2d 432, *cert. denied* (1970), 398 U.S. 954, 26 L. Ed. 2d 296, 90 S. Ct. 1881) and, where the evidence so clearly points to defendant's guilt that the improper remarks could not have influenced the verdict, error will not be found (*People v. Gillarm* (1976), 41 Ill. App. 3d 174, 353 N.E.2d 280; also see *People v. Mackins* (1974), 17 N.E.2d 24, 308 N.E.2d 92, *cert. denied* (1975), 419 U.S. 1111, 42 L. Ed. 2d 808, 95 S. Ct. 786). Failure to object to improper remarks at trial waives the error on review except if so prejudicial as to deny real justice or to affect the verdict. (*People v. Carlson* (1980), 79 Ill. 2d 564, 404 N.E.2d 233.) In particular, it is proper for the prosecutor to comment on the facts introduced in evidence and to express the reasonable inferences drawn therefrom (*People v. Young* (1975), 33 Ill. App. 3d 443, 337 N.E.2d 40; *People v. Porterfield* (1971), 131 Ill. App. 2d 167, 268 N.E.2d 537), and a prosecutor, in discussing the credibility of a witness, may call him false if in so doing his conclusion derives from such evidence and inferences (*People v. Owens* (1977), 46 Ill. App. 3d 978, 361 N.E.2d 644; *Franklin*).

■■ In the instant case, there was testimony that Willie Sims had two beers at Pierce's tavern on the night in question and that assistant State's Attorney Solganick believed Sims to be intoxicated when he spoke with him in the courtroom. A fair appraisal of the evidence indicates that the prosecutor's remark, while apparently intended to reflect on the credibility of Sims, was nevertheless unsupported by the evidence and thus improper. We think it unreasonable to infer from the record that Sims would perjure himself in return for intoxicating liquor. Defendant has failed, however, to demonstrate that he was substantially prejudiced or that the remark made in closing argument was accorded undue weight by the jury. To the contrary, our review of the entire record compels the conclusion that defendant's guilt was so clearly demonstrated through the testimony of three eyewitnesses that the remark was of slight significance to the jury and, therefore, the error was harmless.

For the reasons stated, the judgment and the sentence are affirmed.

Affirmed.

LORENZ and WILSON, JJ., concur.